# No. 24-10518

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

CARA WESSELS WELLS

*Plaintiff - Appellant,*

v.

TEXAS TECH UNIVERSITY; SAMUEL PRIEN; LINDSAY PENROSE,

*Defendants - Appellees.*

---

## On Appeal from
United States District Court for the Northern District of Texas

5:23-CV-60

---

## BRIEF OF APPELLANT CARA WELLS

---

SUBMITTED BY:
WILLIAM BREWER, IV
wbb@brewerattorneys.com
BREWER, ATTORNEYS & COUNSELORS
750 Lexington Avenue, 14th Floor
New York, NY 10022
Counsel for Plaintiff-Appellant
Cara Wessels Wells

<u>CERTIFICATE OF INTERESTED PERSONS</u>

Appellant certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

1) **<u>Plaintiff-Appellant:</u>**

   Cara Wessels Wells

2) **<u>Defendants-Appellees:</u>**

   Texas Tech University; Samuel Prien; Lindsay Penrose

3) **<u>Counsel for Plaintiff-Appellant:</u>**

   William Brewer, IV/Brewer, Attorneys & Counselors

4) **<u>Counsel for Defendants-Appellees:</u>**

   Kirstin M. Erickson/Office of the Attorney General of Texas

5) **<u>Counsel for Defendants-Appellees:</u>**

   Alyssa Bixby-Lawson/Office of the Attorney General of Texas

*/s/ William Brewer, IV*
**WILLIAM BREWER, IV**
**Attorney of record for Appellant Cara Wessels Wells**

<u>STATEMENT REGARDING ORAL ARGUMENT</u>

Plaintiff-Appellant Cara Wessel Wells ("Wells") requests oral argument as she believes it could aid the decisional process in this case.

TABLE OF CONTENTS

Certificate of Interested Persons ............................................................. ii

Statement Regarding Oral Argument ..................................................... iii

Table of Contents ................................................................................. iv

Table of Authorities ............................................................................... 1

Jurisdictional Statement ......................................................................... 5

Issues Presented ..................................................................................... 6

Statement of the Case ............................................................................. 7

Summary of the Argument ...................................................................... 9

Argument ............................................................................................. 10

    I.     Standard of Review ...................................................... 10

    II.    Motion to Dismiss Standard ......................................... 10

    III.   Wells' Title VII claims against TTU were improperly dismissed because they are timely and adequately pleaded. ........................... 10

    IV.   Wells' Title IX claim against TTU was improperly dismissed because they were timely, she has standing to do so, and they are adequately pleaded. .......................................................... 15

    V.    Wells' claims for unjust enrichment, breach of fiduciary duty, trade secret misappropriation, and tortious interference with contract relations were improperly dismissed.................................. 18

    VI.   Wells' trade secret misappropriation claim was adequately pleaded. ................................................................................. 21

    VII.  District Court improperly denied Wells' request to amend............. 22

Conclusion ........................................................................................... 23

Certificate of Service............................................................................ 24

Certificate of Compliance ........................................................................25

TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alief Indep. Sch. Dist. v. Velazquez*,
    No. 01-22-00444-CV, 2023 WL 3555495 (Tex. App. May 18,
    2023) .................................................................................................19

*Allen v. Radio One of Tex. II, LLC*,
    515 F.App'x 295 (5th Cir. 2012) ........................................................13

*Arredondo v. Estrada*,
    120 F.Supp.3d 637 (S.D. Tex. 2015) ..................................................15

*Berry v. Board of Supervisors of Louisiana State Univ.*,
    715 F.2d 971 (5th Cir. 1983), *cert. denied*, 479 U.S. 868, 107 S.Ct.
    232 (1986) ...........................................................................................15

*Bitterman v. Zink*,
    371 F.Supp.3d 974 (D.N.M. 2019) .....................................................11

*Cai v. Chen*,
    No. 14-20-00588-CV, 2022 WL 2350049 (Tex. App. June 30,
    2022) ...................................................................................................19

*Celestine v. Petroleos de Venezuela, SA*,
    266 F.3d 343 (5th Cir. 2001), *abrogated on other grounds, Nat'l
    R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061
    (2002) ..................................................................................................15

*Centennial Bank v. Holmes*,
    2024 WL 733649 (N.D. Tex. Feb. 20, 2024) ......................................21

*Doe v. Beaumont Indep. Sch. Dist.*,
    615 F. Supp. 3d 471 (E.D. Tex. 2022).................................................16

*Doe v. Edgewood Indep. Sch. Dist.*
    964 F.3d 351 (5th Cir. 2020) ..............................................................14

*Haavistola v. Community Fire Co. of Rising Sun, Inc.*,
   6 F.3d 211 (4th Cir.1993)....................................................................12

*Jackson v. Birgiminham Bd. of Educ.*,
   544 U.S. 17 (2005)............................................................................16

*Jackson v. Texas S. Univ.*,
   997 F. Supp. 2d 613 (S.D. Tex. 2014)..............................................19

*Johnston v. Espinoza Gonzalez*,
   2016 WL 7188524 (D. Colo. Dec. 12, 2016) ....................................11

*Juino v. Livingston Par. Fire Dist. No. 5*,
   717 F.3d 431 (5th Cir. 2013) .......................................................11, 12

*Karns v. McDonough*,
   580 F.Supp.3d 398 (W.D. Tex. 2022) ...............................................11

*Lakoski v. James*,
   66 F.3d 751 (5th Cir. 1995) ..............................................................16

*Long v. Eastfield Coll.*
   88 F.3d 300 (5th Cir. 1996) ..............................................................13

*Lowrey v. Texas A&M Univ. Sys.*,
   117 F.3d 242 (5th Cir. 1997) ............................................................16

*Lozano v. Baylor Univ.*,
   No. 6:16-CV-403-RP, 2022 WL 4715725.....................................14, 15

*Morin v. Caire*,
   77 F.3d 116 (5th Cir. 1996) ................................................................9

*Murrell v. School Dist. No. 1*,
   186 F.3d 1238 (10th Cir. 1999) ........................................................16

*Nat'l Railroad Passenger Corp v. Morgan*,
   122 S.Ct. 2061 (2002).......................................................................12

*Phillips v. Frey*,
   20 F.3d 623 (5th Cir. 1994) ..............................................................21

*Ramming v. United States,*
  281 F.3d 158 (5th Cir. 2001) ...................................................................9

*Taco Cabana Int'l, Inc. v. Two Pesos, Inc.,*
  932 F.2d 1113 (5th Cir. 1991), *aff'd sub nom. Two Pesos, Inc. v.*
  *Taco Cabana, Inc.,* 505 U.S. 763, 112 S. Ct. 2753, 120 L. Ed. 2d
  615 (1992) ............................................................................................20

*Trevino v. Mouser Electronics,*
  2023 WL 3984668 (N.D. Tex. May 11, 2023) ...................................10

*Turner v. Pleasant,*
  *663 F.3d 770 (5th Cir. 2011)* ...............................................................9

*Wrenn v. G.A.T.X. Logistics, Inc.,*
  73 S.W.3d 489 (Tex. App. 2002) .........................................................19

## Statutes

20 USC 1681(a) .........................................................................................14

42 USC 2000e-5(b), (e)(1) .......................................................................10

Defend Trade Secrets Act .........................................................................20

Tex. Civ. Prac. & Rem. Code Ann. § 134A.002(6) (West Supp. 2013) ...............21

Tex. Civ. Prac. & Rem. Code § 101.001(5) ..............................................19

Tex. Labor Code 21.202(a) .......................................................................10

Texas Tort Claims Act ..............................................................................18

Texas Uniform Trade Secrets Act ............................................................20

Tort Claims Act ........................................................................................19

TUTSA .....................................................................................................20

## Other Authorities

Federal Rules of Civil Procedure Rule 12(b)(6) ......................................9

Restatement (Third) of Agency § 7.07(2) ...............................................19

Rule 12(b)(1) .............................................................................................................9

JURISDICTIONAL STATEMENT

The District Court had jurisdiction over this appeal pursuant to 28 U.S.C. § 1331, which grants the district courts original jurisdiction over civil actions arising under the laws of the United States. Plaintiff's suit involved Title VII and Title IX claims, as well as pendant state law claims pursuant to 28 U.S.C. § 1367. This Court has jurisdiction over this appeal pursuant to 29 USC § 1291 because the appealed Order dismissing Plaintiff's claims with prejudice is the final Order of the District Court.[1] Wells timely appealed by filing her notice of appeal within 30 days of the district court's Order of May 7, 2024.[2]

---

[1] ROA.289-327.
[2] ROA.289-327; ROA.328.

ISSUES PRESENTED

This appeal raises the following issues:

1. Did the District Court err in dismissing Plaintiff's Title VII sexual harassment claims as untimely and Plaintiff's Title VII retaliation claims as untimely and implausibly alleged?

2. Did the District Court err in dismissing Plaintiff's Title IX claim as untimely, for lack of standing, and for failure to state a claim?

3. Did the District Court err in dismissing Plaintiff's state tort law claims for unjust enrichment, breach of fiduciary duty, trade secret misappropriation, and tortious interference with contract relations on the basis that they were immune pursuant to the Texas Civil and Practice Remedies Code Sections 101.106(e) and 101.106(f)?

4. Did the District Court err in dismissing Plaintiff's trade secret misappropriation claim for failure to state a claim?

5. Did the District Court err in denying Plaintiff's request for leave to amend her complaint?

S<small>TATEMENT OF THE</small> C<small>ASE</small>

In 2009, Dr. Wells began her career in animal sciences at TTU. ROA.134 (¶ 32). Early on, Dr. Prien seemed to show an interest in Dr. Wells' work. ROA.135-36 (¶ 34). However, as time went on, it became clear that Dr. Prien's interest was far from scholastic and/or professional. ROA.136 (¶ 35), 138-39 (¶¶ 39, 41, 44), 140 (¶ 51). Indeed, with the assistance of his associate Dr. Penrose, Dr. Prien repeatedly coerced Dr. Wells into demeaning and uncomfortable situations. ROA.137-42 (¶¶ 37, 40, 45, 52, 55, 56, 58, 60). As Dr. Prien became increasingly jealous and possessive, Dr. Wells made it clear that she was not interested—and was capable of succeeding on her own. ROA.139-40 (¶ 46), 141-42 (¶¶ 54, 57). In retaliation, Drs. Prien and Penrose made it their mission to harm Dr. Wells career in any way they could, including, but not limited to, taking credit for Dr. Wells' work, interfering in Dr. Wells' career opportunities, and pursuing financial opportunities to which they were not entitled. ROA.139-40 (¶ 46), 142-44 (¶¶ 60, 65-70), 151-53 (¶¶ 96-104). During her involvement with the school, Dr. Wells reported this behavior to TTU on numerous occasions. ROA.153-54 (¶¶ 105-107). The University failed to investigate, offer any protection, or honor commitments to patents she invented. ROA.154 (¶ 107). More egregious still, in June 2022, TTU fired Dr. Wells from her mentorship role and retaliated further by blacklisting Dr. Wells from University and related endeavors. ROA.155 (¶ 112). As recently as February 2023, Dr. Prien, fully

backed by TTU, has continued to spread false and defamatory lies about Dr. Wells, further harming her reputation in a small community. ROA.156 (¶ 117). Defendants actions resulted and continue to result in real harm to Dr. Wells. ROA.139 (¶ 45), 141 (¶ 56), 143-44 (¶ 67), 149 (¶ 90), 152-53 (¶¶ 101-104), 155-56 (¶¶ 112, 114-115, 117).

On November 11, 2022, Dr. Wells filed a Charge of Discrimination with the EEOC. ROA.134 (¶ 30). On December 22, 2022, the EEOC issued a Notice of Right to Sue. ROA.134 (¶ 31). On March 22, 2023, Dr. Wells filed her original complaint, alleging numerous causes of action against Defendants TTU, Dr. Prien, and Dr. Penrose. ROA.8-49. On June 22, 2023, Dr. Wells filed her First Amended Complaint, asserting fourteen causes of action against Defendants. ROA.128-66. On July 6, 2023, TTU moved to dismiss Dr. Wells' Amended Complaint pursuant to Rule 12(b)(6), ROA.181-92, and Dr. Prien and Dr. Penrose moved to dismiss pursuant to Rule 12(b)(1) and Rule(b)(6). The Court stayed discovery on July 19, 2023. ROA.237-44. On May 7, 2024, the District Court dismissed every single one of Wells' claims. ROA.289-327 (the "Decision"). Wells now appeals and seeks reversal of the Decision with respect to her claims for Title VII violations, Title IX violations, unjust enrichment, breach of fiduciary duty, trade secret misappropriation, tortious interference with contractual relations, and statutory trade secret misappropriation.

## SUMMARY OF THE ARGUMENT

Plaintiff's Title VII sexual harassment claims were timely alleged because she was an employee until June 2022 and filed her EEOC charge in November 2022. Plaintiff's Title VII retaliation claims are untimely for that reason, and also because the retaliation alleged to have occurred within the relevant period is causally related to the protected activity.

Plaintiff's Title IX claim was timely because the alleged conduct accrued within the two-year statutory period. Plaintiff has standing for and adequately pleads her Title IX claim as it is in part based on retaliatory conduct, and, in any event, because she pleads notice and indifference.

Individual defendants are not immune from Plaintiff's state tort law claims for unjust enrichment, breach of fiduciary duty, trade secret misappropriation, and tortious interference with contract relations. The conduct does not all arise out of the same conduct alleged against the University and is not within the individuals' scope of employment.

Plaintiff's statutory trade secret misappropriation claim is adequately pleaded as she pleads each element required.

Lastly, the District Court erred in denying Plaintiff's request for leave to amend her complaint with the benefit of the Court's decision—leave to amend should be freely granted particularly in the context of pre-discovery amendment.

9

<u>ARGUMENT</u>

## I.     Standard of Review

A denial of a motion to dismiss is subject to de novo review.[3]

## II.     Motion to Dismiss Standard

Defendants-Appellees sought dismissal pursuant to Rule 12(b)(1). A motion challenging subject matter jurisdiction should only be granted "if it appears certain the plaintiff cannot prove any set of facts that would entitle her to recovery."[4]

Defendants-Appellees also sought dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Such motions to dismiss are "viewed with disfavor" and "rarely granted."[5] Facts alleged must be accepted as true as well as viewed in the light most favorable to the plaintiff.[6] While a complaint must state more than conclusions, it "need not contain detailed factual allegations."[7]

## III.     Wells' Title VII claims against TTU were improperly dismissed because they are timely and adequately pleaded.

The District Court ruled that the Wells' Title VII claims for sexual harassment, hostile work environment, and retaliation are time-barred, because Wells did not file her EEOC charge within the 300-day limitations period. With

---

[3] *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996).
[4] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)).
[5] *See Turner v. Pleasant,* 663 F.3d 770, 775 (5th Cir. 2011).
[6] *Id.*
[7] *Id*.

respect to Wells' claims for sexual harassment/hostile work environment, the Decision finds that despite being a mentor at the school through June 2022, she was only an employee for purposes of Title VII through 2017 when she completed her PhD. ROA.297-98. With respect to Wells' retaliation claim, the District Court found that, although former employees can sue pursuant to Title VII, Wells' claims were "too attenuated" or failed to plausibly allege that they were retaliatory. ROA.298-99.

In Texas, a charge of discrimination must be filed with the EEOC within 300 days of the unlawful employment practice occurred.[8] Wells filed her charge on November 11, 2022. ROA.134 (¶ 30).

Wells' sexual harassment/hostile work environment claims were timely, because Wells sufficiently alleged that she was an employee until June 2022, making her charge filed in November 2022 well within the limitations period. A non-traditional hire may be considered an "employee" under certain circumstances, which is addressed by a two-part test in the 5th Circuit: "[C]ourts conduct a two-step inquiry by requiring that a volunteer first show remuneration as a threshold matter before proceeding to the second step—analyzing the putative employment relationship under the common law agency test. Remuneration may consist of either

---

[8] *See* 42 USC 2000e-5(b), (e)(1); Tex. Labor Code 21.202(a). The Decision states that Wells claim was subject to a 180 day limitations period. However, in a deferral state such as Texas, the 300-day limitations period applies. *Trevino v. Mouser Electronics*, 2023 WL 3984668, at *3 (N.D. Tex. May 11, 2023).

direct compensation, such as a salary or wages, or indirect benefits that are not merely incidental to the activity performed."[9] The District Court found she was not an employee solely with respect to this "threshold remuneration" test. ROA.298. Here, Wells alleges facts that establish an employment relationship with TTU during her time as a mentor via indirect benefits. ROA.154-55 (¶¶ 108-110). For example, Dr. Wells alleged that the Accelerator Hub was the product of a rigorous interview process, including background checks and onboarding procedures. ROA.154 (¶ 109). Having been accepted via this rigorous process, Wells was marketed via the TTU website, which can be viewed as indirect compensation in her tightly-knit academic and professional communities. ROA.154-55 (¶ 110). Importantly, the Accelerator Hub was used to transform mentors into full-time roles or partnerships, which Wells alleges she intended to use her position to accomplish. ROA.155 (¶ 111). Courts in this Circuit have recognized such volunteer positions that "regularly lead[] to regular employment" as "compelling" basis upon which to confer employee status.[10]  In any event, other Circuits applying a similar test have noted that a determination as to whether a plaintiff's role qualified as an "employee" is a question for the factfinder in appropriate for dismissal at the motion to dismiss stage.[11] As a

---

[9]  *Juino v. Livingston Par. Fire Dist. No. 5*, 717 F.3d 431 (5th Cir. 2013); *see also Karns v. McDonough,* 580 F.Supp.3d 398, 405 (W.D. Tex. 2022).

[10] Weaver v. City of Runaway Bay, Texas, 2020 WL 13607739, at *4 (N.D. Tex. Feb. 11, 2020); *see also Bitterman v. Zink*, 371 F.Supp.3d 974, 981 (D.N.M. 2019); *Johnston v. Espinoza Gonzalez*, 2016 WL 7188524 (D. Colo. Dec. 12, 2016).

[11] *See e.g., Haavistola v. Community Fire Co. of Rising Sun, Inc.,* 6 F.3d 211, 221 (4th Cir.1993)

result, Wells was an employee for purposes of her Title VII claim through June 2022, making her charge filing timely and meriting reversal.[12] [13]

Wells' retaliation claim is also timely and plausibly alleged. As the Decision states, Wells filed her charge on November 11, 2022, making timely claims of retaliation occurring on January 15, 2022 or later. Here, Wells alleges retaliation by TTU in June 2022 (and February 2023), making such claims timely. ROA.299. As the foregoing makes clear, Wells was an employee through June 2022. As such, the District Court improperly ruled that the timeline was too "attenuated." ROA.300. However, even if Wells was only an employee until 2017 (she was not), this Circuit recognizes that the "Supreme Court has long allowed claims for retaliation by former employees against former employers for post-employment adverse employment

---

("because compensation is not defined by statute or case law, we hold that it cannot be found as a matter of law. The district court must leave to a factfinder the ultimate conclusion whether the benefits represent indirect but significant remuneration as [the plaintiff] contends or inconsequential incidents of an otherwise gratuitous relationship as the [defendant] argues.").

[12] Although the Decision does not address it, common law agency is also plainly satisfied, as Wells alleged, e.g., that the position took place at TTU, was under the direction of TTU and its professors, was in the regular business of TTU, and fully at TTU and its professors' discretion. *See Juino*, 717 F.3d at 434.

[13] Importantly, Plaintiff's allegations of a hostile work environment are comprised of ongoing violations and render timely all misconduct leading up to the final acts of discrimination. Where a hostile work environment exists involving unlawful employment practices occurring "cumulatively" over time, "it does not matter, for purposes of the statute, that some of the components of the hostile work environment fall outside the statutory time period," "provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court." *Nat'l Railroad Passenger Corp v. Morgan*, 122 S.Ct. 2061, 2071 (2002). Here, Wells alleges an alarming set of employment practices perpetrated and condoned by TTU over the course of her tenure, and ending with not only the publication of the harmful emails in June 2022 but continuing with harmful and retaliatory actions *continuing through February 2023*. ROA.154-56 (¶¶ 110-115, 117) Because the last of the series of acts occurred well within the limitations period, the hostile work environment claim is timely.

actions" and applies a but-for causation test.[14] Wells alleges that she engaged in protected activity, including numerous reports to TTU regarding the illicit and damaging behavior she endured. ROA.153-54 (¶¶ 105-107). She then alleges that Defendants engaged in a campaign of retaliation against her by, *inter alia*, terminating Dr. Wells' mentorship and publicly blacklisting her from University sanctioned relationships. (¶ 112) On June 10, 2022, TTU knowingly sent or allowed to be sent an email blacklisting Dr. Wells from the community. ROA.155 (¶ 112). Contrary to the District Court's likening of this case to *Allen*, here, TTU did not simply refuse to do business with Wells at some point after her disassociation. Rather, while still actively engaged with TTU—Wells was removed from her position and then explicitly and specifically blacklisted from the community, which had immediate and direct as well as wide-ranging impact to academic and professional opportunities. That is sufficient to allege a causal connection in support her retaliation claim.[15]

For the foregoing reasons, Wells' Title VII Claims were timely and adequately pleaded. The dismissal of those claims should be reversed.

---

[14] *Allen v. Radio One of Tex. II, LLC,* 515 F.App'x 295, 302 (5th Cir. 2012) (citing *Robinson v. Shell Oil Co.*, 519 US 337 (1997)).
[15] *See Long v. Eastfield Coll.* 88 F.3d 300, 305 n.4 (5th Cir. 1996).

**IV.    Wells' Title IX claim against TTU was improperly dismissed because they were timely, she has standing, and they are adequately pleaded.**

The District Court dismissed Wells' Title IX claims against TTU on numerous bases. First, the Decision states the claim was untimely because Wells ceased being a student in 2017 and "many" of Wells' allegations fall outside the two-year period. ROA.300-01. Second, the Decision states that employees do not have a private right of action unless there is retaliation alleged, "which is not at issue here." ROA.300-01. Third, the Decision states that Wells' allegations of misconduct by TTU do not constitute denying her benefits of an education program. Lastly, the Decision holds that TTU did not have actual notice of the conduct and therefore cannot held liable. ROA.301-03.

Title IX prohibits intentional sex discrimination "under any education program or activity receiving federal financial assistance."[16] Title IX claims have a two-year statute of limitations.[17]

First, Wells' Title IX claim is timely. As argued above, TTU's misconduct in retaliation to Well's complaints continued through at least June 2022 (and even beyond), making Plaintiff's claims based on that conduct well within a two-year statute of limitations period. Moreover, Title IX claims may accrue when the conduct

---

[16] 20 USC 1681(a); *see also Doe v. Edgewood Indep. Sch. Dist*. 964 F.3d 351, 358 (5th Cir. 2020).
[17] *Lozano v. Baylor Univ.,* No. 6:16-CV-403-RP, 2022 WL 4715725, at *3 (W.D. Tex. Sept. 30, 2022.

15

occurs, or when plaintiff is aware of the experience of the circumstances that would lead a reasonable person to become aware of same.[18] Certain of Plaintiff's Title IX claims did not begin to accrue for much of the misconduct alleged until 2022, well within the two-year statutory period. Dr. Wells alleges that she only later became aware of certain of the harmful misconduct that occurred during and after her tenure at TTU—including her removal from academic articles and the dissemination of false and harmful information about her. ROA.152-53 (¶¶ 101, 102-104), 155-56 (¶¶ 114-115, 117) 158 (¶ 146).[19]

Second, Wells pleads a claim under Title IX in this context because she alleges facts that support a claim for retaliation. As the District Court noted, a plaintiff who is not a student asserting retaliation claims may assert claims under Title IX.[20] This

---

[18] *Id.*

[19] Further, much like Dr. Wells' Title VII claims, Dr. Wells' allegations of TTU's continuing misconduct and harms to Dr. Wells make TTU's prior misconduct timely as well. The doctrine of continuing violations applies when a defendant engages in a series of related actions, where at least one of the actions falls within the limitations period. *Berry v. Board of Supervisors of Louisiana State Univ.*, 715 F.2d 971, 979 (5th Cir. 1983), *cert. denied*, 479 U.S. 868, 107 S.Ct. 232 (1986); *Arredondo v. Estrada*, 120 F.Supp.3d 637, 644 (S.D. Tex. 2015). Courts examine several factors when determining whether conduct constitutes a continuing violation, including: (1) the subject matter, or whether the acts involve the same type of discrimination; (2) frequency, or whether the acts are recurring or isolated; and (3) degree of permanence, or whether the acts are such the plaintiff should know to assert his rights. *Celestine v. Petroleos de Venezuela, SA*, 266 F.3d 343, 351 (5th Cir. 2001), *abrogated on other grounds, Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061 (2002); *see also, Berry v. Bd. of Sup'rs of L.S.U.*, 715 F.2d 971, 980 (5th Cir. 1983). Here, TTU's misconduct involves gender discrimination/sexual harassment which took place over a span over many years that eventually led Dr. Wells to realize she had experienced actionable harassment and discrimination. (Compl. ¶ 37, 39, 41, 45, 54-60, 65-70, 72, 89-94, 96-104, 105-107, 109, 111-117).

[20] *See Lowrey v. Texas A&M Univ. Sys.,* 117 F.3d 242 (5th Cir. 1997); *Lakoski v. James*, 66 F.3d 751, 754 (5th Cir. 1995).

is the case even where the victim of the retaliation is not the victim of the original discrimination that is the subject of the complaint.[21] "Indeed, retaliation presents an even easier case than deliberate indifference."[22] Wells alleges facts to support this claim, including a failure to investigate after hearing input from Wells, Prien, and Penrose, Wells' complaints of having to share hotel rooms with her professors, and subsequent adverse actions without justification or explanation. ROA.131 (¶¶ 13, 14), 153-54 (¶¶ 105-106), 155-56 (¶¶ 112, 117).

Moreover, Wells adequately pleads notice and deliberate indifference. A plaintiff must show that: (1) an appropriate person who has at a minimum authority to institute corrective measures to end the discrimination (2) had actual notice of the discrimination and (3) must have failed to adequately respond to the notice.[23] However, the determination of whether someone is an "appropriate person" for purposes of Title IX notice is necessarily a factual question to be determined by the factfinder.[24] Such a decision is premature before any discovery has commenced. Here, Plaintiff adequately alleges that she reported the misconduct to an "appropriate person." Wells alleged that she reported the misconduct of Dr. Prien and Dr. Penrose

---

[21] *Jackson v. Birgiminham Bd. of Educ.*, 544 U.S. 17 (2005).

[22] *Id.*

[23] *Doe v. Beaumont Indep. Sch. Dist.,* 615 F. Supp. 3d 471, 498 (E.D. Tex. 2022).

[24] *Murrell v. School Dist. No. 1*, 186 F.3d 1238, 1247 (10th Cir. 1999) (reversing lower court's dismissal of Title IX and § 1983 claims) ("Because officials' roles vary among school districts, deciding who exercises substantial control for the purposes of Title IX liability is necessarily a fact-based inquiry.").

to Mark Sheridan, Vice Provost for Graduate and Postdoctoral Affairs and Dean of the Graduate School, ROA.153-54 (¶ 106) and that high ranking individuals at TTU perpetrated much of the misconduct, including the TTU System Commercialization Director of the Office of Research Commercialization, the Vice President for Research and Innovation, Executive Director of the technology transfer office, Office of the General Counsel for TTU, TTU's outside IP counsel, and individuals with control over TTU's website. ROA.149-50 (¶¶ 90-94), 152 (¶¶ 102-104), 155 (¶ 112-114), 156 (¶ 116). This notice and indifference to same is adequately pleaded. Whether such individuals did in fact constitute adequate notice and were deliberately indifferent is a fact question inappropriate for adjudication on a motion to dismiss.

## V.    Wells' claims for unjust enrichment, breach of fiduciary duty, trade secret misappropriation, and tortious interference with contract relations were improperly dismissed.

The District Court dismissed Wells' claims for unjust enrichment, breach of fiduciary duty, trade secret misappropriation, and tortious interference with contractual relations under the TTCA holding that they "arise from the same subject matter as the action brought against" TTU and are "within the general scope" of Prien and Penrose's employment. ROA.314-20.

First, the foregoing claims do not arise from the "same subject matter as the action brought against" TTU pursuant to the election of remedies provision Section

101.106(e).[25] Indeed, the misconduct attributed to Prien and Penrose in support of Wells' claims for intentional infliction of emotional distress, fraudulent concealment, and defamation per se involve different allegations than the claims that are the subject of this section. Although certain of the facts may overlap, that does not render the individual Defendants immune, especially where their misconduct is separate and supports the cause of action on its own.

Second, the foregoing claims were improperly dismissed because they were not filed against TTU and the conduct is not alleged to be within the professors' scope of employment pursuant to Section 101.106(f). Section 101.106(f) provides, "[i]f a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only." "§ 101.106 [of the Texas Tort Claims Act] expressly limits its scope to suits against 'an employee of a governmental unit' and requires dismissal only if it is 'based on conduct within the general scope of that employee's employment.'"[26] In Texas, intentional torts "perpetrated by [an] employee...are not ordinarily within the course and scope of an

---

[25] Section 101.106(e) provides: "If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the government unit."

[26] *Jackson v. Texas S. Univ.,* 997 F. Supp. 2d 613, 633 (S.D. Tex. 2014).

employee's authority or employment."[27] The TTCA defines "scope of employment" as "the performance of a task lawfully assigned to an employee by a competent authority."[28] Texas courts analyzing the scope of employment issue often look to the Restatement (Third) of Agency.[29] The Restatement states "An employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer." Restatement (Third) of Agency § 7.07(2).  The burden of proof that the complaint alleges conduct objectively within the scope of defendants' employment rests with the defendants.[30] Here, defendants did not offer any proof as individual Defendants' conduct was not within the scope of their job responsibilities. Nor do Wells' allegations conclusively show that the conduct within the professors' scope of employment. Indeed, the crux of the claims is that Prien and Penrose improperly absconded with information and funds that were owed and perhaps are continued to be owed to Wells as a result of their bad conduct in relation to Wells intellectual property, professional achievements, and information gleaned from her work. This

---

[27] *Wrenn v. G.A.T.X. Logistics, Inc.,* 73 S.W.3d 489, 494 (Tex. App. 2002) (granting summary judgment on the issue of respondeat superior based on holding that intentional tort was not within scope of employment).

[28] Tex. Civ. Prac. & Rem. Code § 101.001(5).

[29] *Alief Indep. Sch. Dist. v. Velazquez*, No. 01-22-00444-CV, 2023 WL 3555495, at *7 (Tex. App. May 18, 2023).

[30] *Cai v. Chen*, No. 14-20-00588-CV, 2022 WL 2350049, at *2 (Tex. App. June 30, 2022). (stating that in order to prove immunity, defendants must "present conclusive evidence that [Plaintiff's] suit (1) is based on conduct within the scope of [defendants'] employment with [a governmental unit] and (2) could have been brought against the governmental unit under the Tort Claims Act.").

is not in the performance of their duties as professors, but instead as individuals attempting to get ahead individually and at her expense. Indeed, the professors may continue to receive royalties to the extent they are not even professors any longer. ROA.161-64 (¶¶ 169-210).

Dismissal of these claims should be reversed.

## VI.    Wells' trade secret misappropriation claim is adequately pleaded.

The District Court dismissed Wells' trade secret misappropriation claim on the bases that she failed to allege that she owned a trade secret and that she took reasonable measures to keep secret. ROA.321-24.

To show that a defendant misappropriated a trade secret, Plaintiff must allege: "(a) the existence of a trade secret; (b) a breach of a confidential relationship or improper discovery of the trade secret; (c) use of the trade secret; and (d) damages."[31] Under the Texas Uniform Trade Secrets Act (TUTSA)[32], a trade secret is defined as:

> information, including a formula, pattern, compilation, program, device, method, technique, process, financial data, or list of actual or potential customers or suppliers, that: (A) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (B) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.[33]

---

[31] *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.,* 932 F.2d 1113, 1123 (5th Cir. 1991), *aff'd sub nom. Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 112 S. Ct. 2753, 120 L. Ed. 2d 615 (1992).

[32] The Defend Trade Secrets Act (DTSA) definition of a "trade secret" is largely identical to the definition under the TUTSA.

[33] Tex. Civ. Prac. & Rem. Code Ann. § 134A.002(6) (West Supp. 2013).

Plaintiff clearly and adequately alleges that the information subject to her agreement with Simplot, information regarding a "sex selection study" she performed in connection with Simplot's agribusiness, was a trade secret because it derived independent economic value and was protected by efforts to keep the information secret including via agreement.[34] ROA.146-47 (¶81), 151 (¶¶ 96-98). She further alleges that the Accelerator Program included a non-disclosure agreement between Prien and Wells, which is a sufficient protective measure.[35] ROA.151 (¶ 96). Dr. Prien improperly acquired the trade secret in breach of the confidential relationship. ROA.151 (¶¶ 96-99). Dr. Prien's submission of the data as support for his abstract qualifies as use of the trade secret, and this use resulted in harm to Dr. Wells. ROA.151-52 (¶¶ 96-100). The foregoing allegations, many of which the District Court ignores, are more than adequate to allege a misappropriation of trade secret claim at the pleading stage.

## VII.    District Court improperly denied Wells' request to amend.

Despite Wells' request to amend in the event of dismissal of any of her claims, the District Court dismissed the Amended Complaint in its entirety with prejudice. ROA.289-327. In support, the Decision notes that there are a "litany" of problems and that Wells amended once. But Wells amended prior to any

---

[34] *Centennial Bank v. Holmes*, 2024 WL 733649 (N.D. Tex. Feb. 20, 2024) (sufficient to "identify specific groupings of information" and "the types of trade secrets in the groupings" and "how the alleged secrets were maintained and treated as secrets").

[35] *Phillips v. Frey*, 20 F.3d 623 (5th Cir. 1994)

decision by the Court, which Decision's reasoning went above and beyond the arguments submitted by Defendants in its analysis of the law. Importantly, the Court stayed discovery—which is not typical in federal court. As such, an amendment was, and would still be, prior to taking any discovery. Wells therefore respectfully requests that the denial of leave to amend be reversed.

<u>CONCLUSION</u>

For the foregoing reasons, Plaintiff-Appellant Wells seeks reversal of the Decision with respect to claims for Title VII violations, Title IX violations, unjust enrichment, breach of fiduciary duty, trade secret misappropriation, tortious interference with contractual relations, and statutory trade secret misappropriation. To that request for relief is not granted, Plaintiff-Appellant requests that the Court reverse the District Court's denial of her request for leave to amend her pleading.

Respectfully submitted,

*/s/ William Brewer, IV*
**William Brewer, IV**
wbb@brewerattorneys.com
BREWER, ATTORNEYS & COUNSELORS
750 Lexington Avenue, 14th Floor
New York, NY 10022
(212) 489-1400 (office)
(212) 751-2849 (telecopier)
Counsel for Plaintiff-Appellant
Cara Wessels Wells

CERTIFICATE OF SERVICE

This is to certify that the foregoing instrument has been served via the Court's ECF filing system in compliance with Rule 25(b) and (c) of the Federal Rules of Appellate Procedure, on August 12, 2024, on all registered counsel of record, and has been transmitted to the Clerk of the Court.


*/s/ William Brewer, IV*
**William Brewer, IV**

CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of FED. R. APP. P. 32(A)(7)(B) because:


•       this brief contains 3,577 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(f).


2.      This brief also complies with the typeface requirements of FED. R. APP. P. 32(A)(5) and the type requirements of FED. R. APP. P. 32(A)(6) because:

•       this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2011 with a 14-point font named Times New Roman.




                              */s/ William Brewer, IV*
                              **William Brewer, IV**
                              **Counsel of Record for Plaintiff-**
                              **Appellant Cara Wessels Wells**

                              Dated: August 12, 2024


4892-9964-0277.2
2337-02