No. 24-10518

_____

# In the United States Court of Appeals for the Fifth Circuit

CARA WESSELS WELLS,

*Plaintiff-Appellant,*

*v.*

TEXAS TECH UNIVERSITY; SAMUEL PRIEN; LINDSAY PENROSE,

*Defendants-Appellees.*

On Appeal from the United States District Court for the Northern District of Texas, Lubbock Division, Cause No. 5:23-CV-60

## BRIEF FOR APPELLEES

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil Litigation

KIMBERLY GDULA
Division Chief
General Litigation Division

KIRSTIN M. ERICKSON
Assistant Attorney General
State Bar No. 24134194
Kirstin.Erickson@oag.texas.gov

ALYSSA BIXBY-LAWSON
Assistant Attorney General
State Bar No. 24122680
Alyssa.Bixby-Lawson@oag.texas.gov

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (210) 270-1118
Fax: (512) 474-2697

Counsel for Appellees

# Certificate of Interested Parties

No. 24-10518

CARA WESSELS WELLS,

*Plaintiff-Appellant,*

*v.*

TEXAS TECH UNIVERSITY; SAMUEL PRIEN; LINDSAY PENROSE,

*Defendants-Appellees.*

Under the fourth sentence of the Fifth Circuit Rule 28.2.1, Defendants-Appellees, as governmental parties, need not furnish a certificate of interested persons.

/s/ *Kirstin M. Erickson*
Counsel for Defendants-Appellees

## STATEMENT REGARDING ORAL ARGUMENT

The district court correctly granted Appellees' motion to dismiss, and the facts are straightforward. Oral argument is unnecessary. Should the Court order oral argument, however, Appellees request to participate.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PARTIES ................................................................. I

STATEMENT REGARDING ORAL ARGUMENT ......................................................... II

TABLE OF CONTENTS ......................................................................................... III

TABLE OF AUTHORITIES...................................................................................... V

ISSUES PRESENTED ............................................................................................. 1

STATEMENT OF THE CASE ................................................................................... 2

SUMMARY OF THE ARGUMENT ......................................................................... 10

STANDARD OF REVIEW...................................................................................... 12

ARGUMENT....................................................................................................... 12

I.    This Court should affirm the dismissal of Wells' Title VII claims as untimely and implausibly alleged because she has not been an employee of TTU since 2017. ............................... 12

    A.    Wells' Title VII claims are untimely because she filed her EEOC charge several years too late. ..................................... 12

    B.    Wells' mentorship with the Hub Program was an unpaid volunteer position—she was not a TTU employee in 2022. ....................................................................... 13

    C.    Wells fails to state a viable Title VII retaliation claim. ............... 18

    D.    This Court should dismiss any Title VII continuing-violation claim. ......................................................................... 21

II.   This Court should affirm the dismissal of Wells' Title IX claims against TTU, Prien, and Penrose. ..................................... 27

    A.    Wells' Title IX claims fail as a matter of law. ............................ 27

    B.    The district court properly found that, even if timely, Wells fails to state viable Title IX claims................................... 29

C.      Wells cannot bring a Title IX retaliation claim for the first time on appeal.................................................................. 32

III.    This Court should affirm the dismissal of Wells' state tort claims against Prien and Penrose pursuant to Sections 101.106(e) and 101.106(f) of the TTCA. ........................................ 35

A.      This Court should affirm the dismissal of all of Wells' tort claims pursuant to Section 101.106(e) of the TTCA.................................................................................... 35

B.      This Court should also affirm the dismissal of Wells' unjust enrichment, breach of fiduciary duty, trade secret misappropriation, and tortious interference with contractual relations under Section 101.106(f) of the TTCA.................................................................................... 38

IV.     This Court should affirm the dismissal of Wells' TUTSA trade secret misappropriation claim for failure to state a claim. ............................................................................................ 41

V.      This Court should also affirm the denial of Wells' request for leave to amend when all of the jurisdictional, statutory, and limitations issues would make an amendment futile. ......................................................................... 43

VI.     Wells has waived any arguments she did not bring in her opening brief. .................................................................... 46

CONCLUSION ................................................................................. 46

CERTIFICATE OF SERVICE ............................................................... 48

CERTIFICATE OF COMPLIANCE.......................................................... 48

iv

# TABLE OF AUTHORITIES

## Cases

*Allen v. Radio One of Tex. II, L.L.C.,*
515 F. App'x 295 (5th Cir. 2013).........................................................passim

*Arismendez v. Coastal Bend Coll.,*
No. 2:19-CV-312, 2020 WL 977231 (S.D. Tex. Feb. 27, 2020)...................9

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)...............................................................................40

*Barnett v. Boeing Co.,*
No. 08-20232, 306 F. App'x 875 (5th Cir. 2009) ...................................26

*Berry v. Bd. of Supervisors of L.S.U.,*
715 F.2d 971 (5th Cir. 1983) .................................................................24

*Bitterman v. Zink,*
371 F.Supp.3d 974 (D.N.M. 2019)..........................................................15

*CAE Integrated, LLC v. Moov Techs., Inc.,*
44 F.4th 257 (5th Cir. 2022) ..................................................................41

*Collier v. Dallas Cnty. Hosp. Dist.,*
827 F. App'x 373 (5th Cir. 2020) ...........................................................26

*Doe v. Edgewood Indep. Sch. Dist.,*
964 F.3d 351 (5th Cir. 2020)............................................................ 29, 31

*Fitzgerald v. Barnstable Sch. Comm.,*
555 U.S. 246 (2009) ...........................................................................7, 27

*Frank v. Xerox Corp.,*
347 F.3d 130 (5th Cir. 2003)..................................................................22

*Franka v. Velasquez,*
332 S.W.3d 367 (Tex. 2011) ...................................................................39

*Gallentine v. Hous. Auth. of City of Port Arthur,*
919 F. Supp. 2d 787 (E.D. Tex. 2013)...........................................23, 24, 25

*Garza v. Harrison,*
574 S.W.3d 389(Tex. 2019)....................................................................39

*GE Betz, Inc. v. Moffitt-Johnston*,
  885 F.3d 318 (5th Cir. 2018) ................................................... 41

*Glass v. Petro-Tex Chem. Corp.*,
  757 F.2d 1554 (5th Cir. 1985) ................................................ 24

*Goodman v. Harris Cnty.*,
  571 F.3d 388 (5th Cir. 2009) .................................................. 37

*Haavistola v. Comm. Fire Co. of Rising Sun, Inc.*,
  6 F.3d 211 (4th Cir. 1993)) ....................................................15

*Hall v. Cont'l Airlines, Inc.*,
  252 F. App'x 650 (5th Cir. 2007) ........................................... 13

*Hanna v. Plumer*,
  380 U.S. 460 (1965) ......................................................... 8, 37

*Harris v. Forklift Sys., Inc.*,
  510 U.S. 17 (1993) ................................................................. 26

*Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*,
  850 F.3d 731 (5th Cir. 2017) ............................................ 22, 23

*Herbert v. United States*,
  53 F.3d 720 (5th Cir. 1995) .................................................... 12

*Holland v. City of Houston*,
  41 F. Supp. 2d 678 (S.D. Tex. 1999) ..................................... 37

*Johnston v. Espinoza Gonzalez*,
  2016 WL 7188524 (D. Colo. Dec. 12, 2016) ...........................15

*Juino v. Livingston Parish Fire Dist.*,
  *No. 5*, 717 F.3d 431 (5th Cir. 2013) ...............................passim

*King-White v. Humble Indep. Sch. Dist.*,
  803 F.3d 754 (5th Cir. 2015) ............................................ 27, 28

*Lakoski v. James*,
  66 F.3d 751 (5th Cir. 1995) .................................................... 32

*Larkins v. S.D.P. Mfg. Inc.*,
  No. 4:23-CV-01687, 2024 WL 3744396 (S.D. Tex. Aug. 8, 2024) ..........28

*Laverie v. Wetherbe,*
    517 S.W.3d 748 (Tex. 2017) ...................................................................... 39

*Lopez v. Kempthorne,*
    684 F. Supp. 2d 827 (S.D. Tex. 2010) ..................................................... 24

*Lowrey v. Tex. A&M Univ. Sys.,*
    117 F.3d 242 (5th Cir. 1997) ................................................................... 32

*Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n,*
    751 F.3d 368 (5th Cir. 2014) ................................................................... 45

*Mclemee v. Van Zandt Cnty.,*
    No. 6:20-CV-420, 2021 WL 2535945 (E.D. Tex. June 21, 2021) ............. 9

*Nat'l R.R. Passenger Corp. v. Morgan,*
    536 U.S. 101 (2002) ................................................................................. 23

*Normore v. Dallas Indep. Sch. Dist.,*
    677 F. Supp. 3d 494 (N.D. Tex. 2023) ..................................................... 33

*Perry v. Tex. Dep't. of Criminal Justice,*
    275 F. App'x 277 (5th Cir. 2008) ............................................................. 32

*Perry v. VHS San Antonio Partners, L.L.C.,*
    990 F.3d 918 (5th Cir. 2021) .............................................................. 16, 17

*Procter & Gamble Co. v. Amway Corp.,*
    376 F.3d 496 (5th Cir. 2004) ................................................................... 46

*Quintanilla v. Tex. Television, Inc.,*
    139 F.3d 494 (5th Cir. 1998) ................................................................... 44

*Robinson v. Shell Oil Co.,*
    519 U.S. 337 (1997) ................................................................................. 19

*Russell v. Univ. of Tex. of the Permian Basin,*
    No. 06–50102, 234 F. App'x 195 (5th Cir. 2007) ..................................... 26

*Scott v. U.S. Bank Nat'l Ass'n,*
    16 F.4th 1204 (5th Cir. 2021) ................................................................. 45

*Smith v. EMC Corp.,*
    393 F.3d 590 (5th Cir. 2004) ................................................................... 44

*Stewart Glass & Mirror, Inc. v. U.S. Auto Glass Disc. Ctrs., Inc.,*
200 F.3d 307 (5th Cir. 2000) .................................................. 32

*Stewart v. Miss. Transp. Comm'n,*
586 F.3d (5th Cir. 2009) ................................................... 23, 24

*Stripling v. Jordan Prod. Co., LLC,*
234 F.3d 863 (5th Cir. 2000) ................................................. 45

*Taylor v. Books A Million,*
296 F.3d 376 (5th Cir. 2002), *cert. denied* (2003) .................................. 13

*Turner v. Baylor Richardson Med. Ctr.,*
476 F.3d 337 (5th Cir. 2007) ................................................. 18

*United States v. Fernandez,*
48 F.4th 405 (5th Cir. 2022) ................................................. 46

*Univ. of Tex. Health Sci. Ctr. at Hous. v. Rios,*
542 S.W.3d 530 (Tex. 2017) ................................................. 35

*Weaver v. City of Runaway Bay, Tex.,*
No. 4:19-CV-00376-O, 2020 WL 13607739 (N.D. Tex. Feb. 11, 2020)....15

*Well Cell Glob. LLC v. Calvit,*
No. H-22-3062, 2024 WL709657 (S.D. Tex. Feb. 21, 2024) .................. 42

*Wilkerson v. Univ. of N. Tex. By & Through Bd. of Regents,*
878 F.3d 147 (5th Cir. 2017 ....................................................40

*Williams v. Bolin,*
694 F. Supp. 3d 904 (S.D. Tex. 2023)................................................ 9, 37

*Wimm v. Jack Eckerd Corp.,*
3 F.3d 137 (5th Cir. 1993) ....................................................44

## Statutes

28 U.S.C. § 2201 ................................................................46

35 U.S.C. § 256 ................................................................46

42 U.S.C . § 1983 ................................................................46

42 U.S.C. § 2000e-5(e)(1)................................................................13, 18

**Rules**

Fed. R. Civ. P. 15(a)(2) ..................................................................... 45

Tex. Civ. Prac. & Rem. Code § 101.106 ........................................... 8

Tex. Civ. Prac. & Rem. Code § 134.002(3) .................................... 42

# ISSUES PRESENTED

The district court granted in full Appellees'–Texas Tech University ("TTU"), Samuel Prien ("Prien"), and Lindsay Penrose ("Penrose") (collectively, "Appellees")—motions to dismiss Wells' fourteen disparate claims against Appellees, ranging from employment discrimination to trade secret misappropriation to defamation per se, based on events during her time as a student at TTU. The district court's dismissal should be affirmed in its entirety. The issues presented are:

1.     Did the district court correctly dismiss Wells' Title VII claims, including sexual harassment, hostile work environment, and retaliation, as untimely and implausibly alleged since she has not been a TTU employee since 2017?

2.     Did the district court correctly dismiss Wells' Title IX claims against TTU, Prien, and Penrose when Title IX only allows for claims against institutions, Wells did not file her Title IX claims within the two-year statute of limitations, and Wells failed to plead that she informed an appropriate official of specific sex-based discrimination who was deliberately indifferent to her complaint?

3.     Did the district court correctly dismiss Wells' state tort law claims for tortious interference with contract, trade secret misappropriation, unjust enrichment, and breach of fiduciary duty against Prien and Penrose

because the Election of Remedies provision of the Texas Civil Practice and Remedies Code require automatic dismissal of these claims since Prien and Penrose's alleged conduct was within the scope of their employment?

4.    Did the district court correctly dismiss the trade secret misappropriation claim because Wells failed to allege sufficient facts to state a Texas Uniform Trade Secrets Act ("TUTSA") claim and failed to bring a federal Defend Trade Secrets Act ("DTSA") claim?

5.    Did the district court properly deny Wells' request for leave to amend because amendment would be futile in light of the jurisdictional, statutory, and limitations issues with each of her claims?

## STATEMENT OF THE CASE

## I.    Statement of Facts

Wells' claims against TTU, Prien, and Penrose were fatally flawed from the outset. She was an undergraduate student at TTU starting in 2009, received her undergraduate degree in 2013, continued as a graduate student, and eventually received her PhD from TTU in 2017. (ROA.134 ¶ 32, 139 ¶ 42, 143 ¶ 64). During her time at TTU as a research assistant and later as a teaching assistant, Wells engaged in research. (ROA.135 ¶ 34, 140 ¶ 50).

Wells took one of Prien's courses and attended an undergraduate research conference for extra credit. (ROA.135 ¶ 33). After the conference, Prien offered Wells a research assistant position in his lab. (ROA.135 ¶ 34).

While working for Prien as a research assistant, Wells claims to have met Penrose. (ROA.136 ¶ 36). She claims that Prien and Penrose acted inappropriately towards her during that time. (ROA.137 ¶ 37).

Wells continued as Prien's research assistant in 2014 and attended research conferences with Prien and Penrose. (ROA.140 ¶¶ 47, 51). Around 2014, Wells became a teaching assistant in Prien's course. (ROA.140 ¶ 50). Wells alleges that she contributed to patents with Prien and Penrose and that she did not receive credit for her contributions. (ROA.130 ¶ 7, 140 ¶ 48).

While attending research conferences, Wells claims to have shared a hotel room with Prien and Penrose between 2012 and 2017. (ROA.138 ¶ 39, 139 ¶ 44, 140 ¶ 51, 145 ¶ 72). She alleges that she emailed a student body representative asking for help to protect students and that she spoke with Kimberly Gramm and Dr. Tim Dallas, a mentor in a TTU Accelerator Program, about being "forced" to share a hotel room with Prien and Penrose on their TTU research trips. (ROA.153 ¶ 105).

After 2017, Wells was no longer a student or employee of TTU when she graduated with her PhD. (ROA.143 ¶¶ 64-65). Post graduation, Wells worked at Ovation Fertility as an andrologist and later started two companies, Embryotics and EmGenisys. (ROA.144 ¶¶ 69, 71-86). Wells does not allege that she earned a salary, any wages, or that she was an employee of TTU after

2017. (*See generally* ROA.128-166). In fact, she alleges that Prien offered Wells an "unpaid position in his lab" after graduation in 2017, but Wells declined the offer. (ROA.143 ¶ 65).

Wells alleges that in the fall of 2020, she attended a virtual lunch with Dr. Mark Sheridan, Vice Provost for Graduate and Postdoctoral Affairs and Dean of the Graduate School, and that she stated that TTU needed to prevent students from sharing hotel rooms with professors. (ROA.153 ¶ 106). She alleges that she spoke with Dr. Sheridan after the virtual lunch at some point and that he responded over a year later. (ROA.153 ¶ 106).

Wells generally alleges that Prien misappropriated a trade secret, but Wells does not allege that she was the owner of any particular trade secret, how any research as part of her companies met the elements of a trade secret, how the alleged trade secret derives economic value from not being generally known, or how Wells maintained the secrecy of the alleged trade secret. (*See generally* ROA.121-159).

Wells submitted her two companies to TTU's Accelerator Hub program ("Hub Program") in 2018 and 2019. (ROA.146 ¶ 78, 148 ¶ 87). This program allows start-up companies to receive free mentorship, funding opportunities, trainings, marketing, and $25,000. (ROA.146 ¶ 78). Wells took advantage of

the Hub Program to benefit both of her companies, Embryotics and EmGenisys, until at least late 2021. (ROA.146 ¶ 78, 148 ¶ 87, 153 ¶ 104).

Wells states she was selected to participate as a mentor in the Hub Program from May 2022 through June 2022. (ROA.154 ¶¶ 108, 110, 155 ¶ 112). She alleges that in June 2022, TTU removed her as a mentor and from the Hub Program website, Prien wrote an email that did not name Wells but that she believed referred to her, and she became aware that TTU had removed her name from TTU publications. (ROA.155 ¶¶ 109, 112, 114).

Wells fails to allege that she had an employment relationship with TTU during her brief time as a mentor or that she received any type of compensation or benefits when she was a mentor in the Hub Program. (ROA.154 ¶¶ 108, 110, 155 ¶ 112). Rather, she merely alleges that she participated in "rigorous interviews, background checks and onboarding procedures," that she was "added to the TTU website," and that she expected her voluntary mentorship to transform into a compensated role in the future. (ROA.154 ¶ 110, 155 ¶ 111).

Wells filed her EEOC Charge alleging sex discrimination and retaliation on November 11, 2022, generally based on the alleged events; the EEOC issued a Right to Sue letter on December 22, 2022. (ROA.44, 46). She filed her original complaint on March 22, 2023, and her amended complaint on

June 22, 2023. (ROA.8-42, 128-166). TTU, Prien, and Penrose filed a motion to dismiss all of Wells' claims.

## II.  The District Court Dismisses All of Wells' Claims.

The district court dismissed all of Wells' claims, denied her request for leave to amend, and entered a Final Judgment on May 7, 2024. (ROA.289-328). The district court dismissed all of Wells' claims with prejudice. (ROA.289).

The district court found that Wells has not been a TTU employee since 2017 and that she did not plausibly allege that she was an employee when she served as an unpaid mentor in 2022. (ROA.297-99). Thus, it held that her Title VII claims for sexual harassment, hostile work environment, and retaliation are time-barred as a matter of law. (ROA.297).

The district court also found that since Wells filed her EEOC charge on November 11, 2022, the only actionable claims of retaliation would be those occurring after January 15, 2022. (ROA.299). It found that Wells did not plausibly allege a retaliation claim because her alleged protected activity took place in the "fall [of] 2020" and her alleged adverse actions of being removed as a mentor occurred five years after her employment ended with TTU, in 2022. (ROA.299-300). The district court also found that her removal as a

mentor in 2022 was too attenuated to support legal causation. (ROA.300); *see Allen v. Radio One of Tex. II, L.L.C.*, 515 F. App'x 295, 303 (5th Cir. 2013).

The district court did not make any findings about a continuing violation claim because Wells never brought this claim under Title VII in her live complaint. (*See generally* ROA.128-166, 294-95). This Court should therefore dismiss Wells' new continuing-violation claim.

The district court held that Wells cannot bring a Title IX claim against the individual defendants and dismissed these claims against Prien and Penrose. (ROA.300); *see Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009).

The district court held that Wells' Title IX claims against TTU fail as a matter of law for several reasons. (ROA.303). It found that Wells filed her Title IX claims against TTU outside the two-year statute of limitations and that Wells has not been a TTU student since 2017. (ROA.301). It also found that as a mentor in the Hub Program, Wells was not a participant or a beneficiary of that program for purposes of Title IX. (ROA.302). The district court additionally found that Wells did not plausibly allege that she gave proper notice to TTU or that TTU was deliberately indifferent to her alleged complaints. (ROA.302-03). The district court therefore dismissed her Title IX claim against TTU. (ROA.300).

The district court also dismissed Wells' patent claims against Prien and Penrose. (ROA.303). The district court held that Prien and Penrose are not proper defendants under *Ex parte Young* and that TTU is an indispensable party to these patent claims. (ROA.303-05). It found that because TTU has sovereign immunity for these claims, it cannot be joined as a defendant to these claims. (ROA.306). The district court therefore properly dismissed Wells' correction of inventorship and declaration of patent invalidity claims against Prien and Penrose. (ROA.303). Wells does not appeal the dismissal of these claims. *See generally* App. Br.

The district court dismissed Wells' intentional infliction of emotional distress ("IIED"), fraudulent concealment, and defamation per se claims against Prien and Penrose. (ROA.307). It found that these tort claims were subject to mandatory dismissal under the Election of Remedies under Section 101.106(e) of the Texas Practice and Remedies Code (or Texas Tort Claims Act ("TTCA")). (ROA.307-14). It found that Wells brought these tort claims against TTU, Prien, and Penrose in her original complaint and that TTU requested dismissal of these claims in its original motions to dismiss. (ROA.307-10).

The district court also found that Wells did not argue that Section 101.106 or the irrevocable-election principle are procedural rules rather than substantive rules that would not apply in federal court. (ROA.310); *see Hanna v. Plumer*, 380 U.S. 460, 465 (1965). The district court provided an analysis and found that several federal courts in Texas have dismissed Texas

Torts Claims Act claims because Texas's irrevocable-election principle is a substantive rule rather than procedural. (ROA.310-11); *e.g. Arismendez v. Coastal Bend Coll.*, No. 2:19-CV-312, 2020 WL 977231 at *4 (S.D. Tex. Feb. 27, 2020); *Mclemee v. Van Zandt Cnty.*, No. 6:20-CV-420, 2021 WL 2535945 at *3 (E.D. Tex. June 21, 2021). The district court thus held that the irrevocable-election principle is a substantive rule that is outcome-determinative, must be applied in federal court, and dismissed Wells' IIED, unjust enrichment, breach of fiduciary duty, and fraudulent concealment claims against Prien and Penrose (ROA.311, 313).

The district court dismissed Wells' other tort claims, tortious interference with contractual relations and trade secret misappropriation against Prien, and unjust enrichment and breach of fiduciary duty against Prien and Penrose are subject to dismissal under Sections 101.106(e) and 101.106(f). (ROA.314-15). The district court found that these claims should be dismissed under Section 101.106(e) "to the extent that they arise from 'the same subject brought against the government entity.'" (ROA.315). *See e.g. Williams v. Bolin*, 694 F. Supp. 3d 904, 919 (S.D. Tex. 2023). The district court also dismissed the claims under Section 101.106(f) because it found that Prien and Penrose were acting within the scope of their employment as professors when the alleged tortious conduct occurred. (ROA.317-20). The district court dismissed tortious interference with contractual relations, trade secret misappropriation, unjust enrichment, and breach of fiduciary duty claims against Prien and Penrose. (ROA.320).

The district court next dismissed Wells' trade secret misappropriation claim against Prien under the TUTSA for failure to plausibly allege that she owned a trade secret that was misappropriated. (ROA.321, 324). It found that Wells did not allege that she owned a trade secret, how an alleged trade secret derived economic value from not being generally known, and that the information that she identifies in her live complaint is "incredibly vague and overinclusive." (ROA.322-24).

The district court also dismissed Wells' sex harassment and discrimination claims brought under Section 1983 against Prien and Penrose because it found that Wells does not allege any current or future interactions between Wells, Prien, and Penrose. (ROA.324-26). It also found that a request for declaratory relief does not make her request prospective relief. (ROA.326). The district court therefore held that Wells failed to allege cognizable Section 1983 claims against Prien and Penrose. (ROA.327).

The district court also held that none of Wells' claims could be rehabilitated by amendment, and thus denied her request for leave to amend as futile.

## SUMMARY OF THE ARGUMENT

This Court should affirm the district court's dismissal of all of Wells' claims and affirm the denial of her request for leave to amend because her claims are fatally flawed and any amendment would be futile.

Wells has not been a student or employee of TTU since 2017 but did not file an EEOC Charge until November 2022. Thus, this Court should affirm the dismissal of her Title VII claim as a matter of law because each is time-barred for failure to timely exhaust her administrative remedies. The continuing-violation doctrine has no application to this case and cannot save her claims, particularly because Wells challenges discrete acts and lacked any employment relationship from which Title VII claims could later derive. Wells also did not bring a continuing-violation claim in her live complaint.

This Court should also uphold the dismissal of Wells' Title IX claims as untimely since they are asserted well outside of the applicable two-year statute of limitations. And even if she had asserted it timely (she did not), Wells failed to state a viable Title IX claim against TTU because she was not a participant or beneficiary of the Hub Program in 2022 and failed to allege that TTU was deliberately indifferent. Her Title IX claims cannot be brought against individual defendants like Prien and Penrose.

This Court should similarly affirm the dismissal of Wells' state tort claims as barred by Section 101.106(e) of the TTCA, which states that "[i]f a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit." The Court should also affirm the

dismissal of Wells' tort claims under Section 101.106(f) of the TTCA because the alleged tortious conduct was within the scope of Prien and Penrose's employment.

This Court should also uphold the dismissal of Wells' trade secret misappropriation claim against Prien for failure to state a claim under TUTSA because Wells fails to allege that she owned a trade secret that was misappropriated. Since Wells did not specifically allege a DTSA claim or make any arguments to its relevance in her brief, this Court should find that any alleged DTSA claim is waived.

Finally, this Court should affirm the denial of leave to amend as futile given the litany of incurable jurisdictional, statutory, and limitations issues.

## STANDARD OF REVIEW

The district court's grant or denial of a defendant's Rule 12(b)(1) and 12(b)(6) motion for dismissal is reviewed de novo, applying the same standard used by the district court. *Herbert v. United States*, 53 F.3d 720, 722 (5th Cir. 1995).

## ARGUMENT

**I.   This Court should affirm the dismissal of Wells' Title VII claims as untimely and implausibly alleged because she has not been an employee of TTU since 2017.**

**A.   Wells' Title VII claims are untimely because she filed her EEOC charge several years too late.**

A court may entertain a Title VII lawsuit *only* if the aggrieved party has (1) exhausted her administrative remedies and (2) has filed suit within the time permitted after receiving a notice of a right to sue. *Hall v. Cont'l Airlines, Inc.*, 252 F. App'x 650, 653 (5th Cir. 2007); *see also Taylor v. Books A Million*, 296 F.3d 376, 378-79 (5th Cir. 2002), *cert. denied* (2003). An EEOC charge needs to be filed within 180 days of the alleged unlawful employment practice. *See* 42 U.S.C. § 2000e-5(e)(1). The district court correctly pointed out that Wells filed her charge with the EEOC and not with the TWC, requiring the 180-day filing deadline from the date of the unlawful employment practice. (ROA.297 n.2). But whether a 300 or 180-deadline applies, Wells filed well beyond the statutory deadline for exhausting her claims, and each of her Title VII claims are therefore barred. (*See* ROA.296).

Wells filed her EEOC charge on November 9, 2022, far outside the limitations period and almost five years too late. Her employment relationship with TTU ended in 2017. (ROA.44, ROA.143 ¶¶ 64-65). Wells cannot circumvent the Title VII mandatory-claims processing rule requiring a plaintiff to first exhaust administrative remedies prior to filing a lawsuit. The district court properly dismissed her Title VII claims as barred for failing to timely exhaust her administrative remedies, and this Court should affirm.

## B.    Wells' mentorship with the Hub Program was an unpaid volunteer position—she was not a TTU employee in 2022.

The district court correctly found that Wells' unpaid mentorship role

was a volunteer position and that she was not an "employee" while engaging with the Hub Program in 2022. (ROA.297-99).

This Court applies the threshold-remuneration test to determine whether allegations support an individual being a volunteer or an employee within the meaning of Title VII. *Juino v. Livingston Parish Fire Dist. No. 5*, 717 F.3d 431, 435 (5th Cir. 2013). This test is "a two-step inquiry [] requiring that a volunteer first show remuneration as a threshold matter before proceeding to the second step—analyzing the putative employment relationship under the common law agency test." *Id.* "Remuneration may consist of either direct compensation, such as a salary or wages, or indirect benefits that are not merely incidental to the activity performed." *Id.* In *Juino*, this Court found that a volunteer firefighter who received slight compensation, a life insurance policy, a uniform and badge, gear, and training was insufficient remuneration to be considered an "employee" and was therefore not covered by Title VII. *Id.* at 439-40.

On the other hand, a court in the Northern District found that benefits were *not* "'significant indirect benefits' considered by [this Court] in *Juino*" but rather are "purely incidental to volunteer service when a plaintiff alleged receiving a uniform and badge, free field training, being sworn in as an officer, handling a harassment complaint, and being told by the chief of police that he wanted to hire her as a full-time employee." *Weaver v. City of*

*Runaway Bay, Tex.*, No. 4:19-CV-00376-O, 2020 WL 13607739, at *4 (N.D. Tex. Feb. 11, 2020).[1]

Here, Wells alleges that she received less than "purely incidental" benefits, below the threshold to show that she was an "employee" while engaged as a mentor in the Hub Program. As the district court emphasized, Wells "does not allege that she received a salary, wages, or significant indirect benefit from her mentor position." (ROA.298). Instead, she argues that the mentorship role would transform into a compensated position or "full-time rol[e] or partnershi[p]" after the mentorship program. (ROA.154 ¶ 108, 110, 155 ¶ 111, App. Br. at 12). She also claims that being on the TTU website and going through "rigorous interviews, background checks and onboarding procedures" created an employment relationship. (ROA.154 ¶ 110, 155 ¶ 111, App. Br. at 12). Wells is wrong. The district court correctly found that "[a]t best, her one-sided expectation is an indirect benefit and is substantially less than the actual compensation and insurance benefits that were found insufficient in *Juino*." (ROA.298). *See Juino*, 717 F.3d at 437, 439-40. The district court properly found that Wells did not meet the remuneration standard set forth by this Court.

---

[1] Wells cites to several non-binding cases, which are inapposite and need not be considered. *See* App. Br. at 12 (*Bitterman v. Zink*, 371 F.Supp.3d 974, 981 (D.N.M. 2019); *Johnston v. Espinoza Gonzalez*, 2016 WL 7188524 (D. Colo. Dec. 12, 2016); *Haavistola v. Comm. Fire Co. of Rising Sun, Inc.*, 6 F.3d 211, 221 (4th Cir. 1993)).

Wells also generally argues that the common-law agency test is satisfied without explaining how this would be relevant and without referring to specific allegations in her complaint. App. Br. at 13 n. 12 (citing *Juino*, 717 F.3d at 434). *Juino* explains that common-law agency analyzes the hiring party's "right to control and means by which the product is accomplished." 717 F.3d at 434.

> [T]he threshold-remuneration line of cases teaches that: (1) remuneration may consist of direct remuneration, *i.e.*, salary or wages, or significant indirect benefits that are not incidental to the service performed, *i.e.*, job-related benefits; (2) if there is no showing of remuneration, courts will not proceed to the common law agency test; and (3) if there is remuneration supporting a plausible employment relationship, courts will proceed to the common law agency test.

*Id.* at 437-38 (emphasis supplied).

This Court applies a "hybrid economic realities/common law control" test to determine whether an individual is an employee or an independent contractor. *Perry v. VHS San Antonio Partners, L.L.C.*, 990 F.3d 918, 925, 928-29 (5th Cir. 2021) ("To determine whether an entity exercises enough control over an individual to qualify as his employer, we apply a 'hybrid economic realities/common law control test.'") (citations omitted).

> When examining the control component, we focus on the right to hire and fire, the right to supervise, and the right to set the employee's work schedule. The economic-realities component of the "hybrid economic realities/common law control test" focuses on who paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment.

*Id.* at 929 (internal citations omitted).

Because Wells fails to allege facts to support "remuneration," this Court need not proceed to the common law agency step. Should the Court review Wells' claims under the common-law agency test, it should find that Wells fails to allege that TTU had the "right to control and means by which [the mentorship was] accomplished." *Juino*, 717 F.3d at 434. Wells does not allege that TTU set her schedule, that she was being supervised as a mentor, or any other facts that would support TTU having control over Wells. (*See generally* ROA.128-166). Even though Wells alleges that she was removed from the mentorship program, this language does not support that she was controlled or supervised by TTU. (ROA.155 ¶ 112). She therefore fails the common law agency test.

Under the economic-realities test, Wells fares no better. She does not allege that she earned a salary, that TTU withheld taxes, that she received any health or retirement benefits, or any terms or conditions that would demonstrate that Wells was a TTU employee while engaged in the Hub Program. *Perry*, 990 F.3d at 929.

Wells fails to plead sufficient facts under either the threshold-remuneration, common law agency, or economic-realities test that would support her being an "employee" in 2022. Wells is asking this Court to infer allegations that she is now arguing would convert her into an "employee" during her time in the Hub Program. App. Br. at 13 n. 12. Wells is incorrect. Because her allegations support Wells being a volunteer mentor in 2022, her Title VII claims fail as a matter of law. This Court should affirm the district

court's finding that Wells' mentorship position in the Hub Program was an "unpaid mentor" position and that she was not an "employee" as a result of her participation in the Hub Program in 2022. (ROA.298). This Court should further also affirm the finding that Wells' "last relevant employment date for actionable harassment or hostile work environment" was in 2017. *Id.*

### C.   Wells fails to state a viable Title VII retaliation claim.

Wells fails to state a viable Title VII retaliation claim. The purpose of these claims is so that employers "may not discriminate against any of his employees because the employee has opposed any practice made an unlawful employment practice by this subchapter, or because she has made a charge in an investigation, proceeding, or hearing under this subchapter." *Allen*, 515 F. App'x at 302  (quoting 42 U.S.C. § 2000e–3(a) (cleaned up)).

To state a *prima facie* claim, a plaintiff must state that "(1) she engaged in protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action." *Allen*, 515 F. App'x at 302 (quoting *Turner v. Baylor Richardson Med. Ctr.,* 476 F.3d 337, 348 (5th Cir. 2007)). As the district court emphasized:

> former employees can fall within the Title VII protections against retaliation . . . [b]ut that is typically a principle to ensure that employees who are discharged in retaliation for their complaints are able to bring claims even though they are no longer a current employee, *see id.*, not to give someone who was once employed by a company a perpetual right of action for any unfavorable action that the company may take at some point in the future.

(ROA.299, citing *Robinson v. Shell Oil Co.*, 519 U.S. 337, 339, 346 (1997)). *See Allen*, 515 F. App'x at 302 (finding no Title VII retaliation when the adverse employment action occurred a year after the protected activity and 18 months after being terminated).

Here, Wells only makes general allegations and legal conclusions—"Plaintiff engaged in opposition activity which is protected under § 704(a) of Title VII"; "Defendant took adverse employment action against Plaintiff that a reasonable employee would consider adverse"; and "[t]here is an existing causal connection between the Plaintiff's activity and the adverse employment action." (ROA.157-58, ¶¶ 138-40). This is wholly insufficient to state a viable retaliation claim, especially when her employment ended in 2017 and she filed her EEOC charge in November 2022. She has not asserted that she engaged in any protected activity prior to the November 2022 EEOC Charge, she does not delineate what the "adverse employment action" she allegedly suffered was, nor does she make any attempt to explain a causal connection between the two.

Wells argues that the Supreme Court allows retaliation claims by former employees for post-employment adverse employment actions referring to her "fall 2020" allegations and removal from the mentorship program in June 2022 as protected activity. App. Br. at 13 (citing *Allen*, 515 F. App'x at

302, ROA.153-55, ¶¶ 105-07, 112). In an attempt to distinguish her case from *Allen*, Wells reasserts that she was removed from her position and blacklisted "while actively engaged with TTU," arguing that this suffices to establish causation for a retaliation claim. App. Br. at 12-13. However, these assertions rest on Wells being an "employee" in June 2022, which she was not.

As the district court properly found, Wells' EEOC charge was filed on November 11, 2022, making only claims that occurred on or after January 15, 2022 actionable. (ROA.299).[2] Wells' only alleged complaint of purported protected activity was in "fall 2020" when she alleges to have reported certain actions to TTU (ROA.153 ¶¶ 106-07, 299-300). Thus, as the district court found, "[s]uch claims of adverse actions that occurred roughly five years after her last date of employment—and over a year after any complaints about impropriety—are simply too attenuated from her employment relationship to state a Title VII claim." (ROA.300, citing *Allen*, 515 F. App'x at 302-03,153-55 ¶¶ 105-06, 112). Appellees agree. Wells has not been an employee since 2017 making any potential adverse actions in 2022 too attenuated to establish causation. *See* App. Br. at 13; *Allen*, 515 F. App'x at 303.

---

[2] She has not alleged that any adverse employment action occurred after her EEOC Charge.

The district court also properly found that "no reasonable worker would refuse to make or support a discrimination charge because, several years later, after initially leaving her employment on her own terms, she may be removed from an unpaid position by the former employer." (ROA.300). The district court also correctly found that Wells did not state any plausible inference that she was removed from the mentorship program or blacklisted in retaliation for any protected activity that occurred when she was a TTU employee pre-2017. (ROA.300, citing ROA.155 ¶ 112). Not only was ending her mentor role not an adverse employment action, as discussed above, but also Wells being relieved of her mentoring role in 2022 is simply too remote in time from her prior purported protected activity to support a causal connection. (ROA.300).

Accordingly, Wells fails to state a viable Title VII retaliation claim. The district court properly dismissed Wells' Title VII retaliation claim, and this Court should affirm. (ROA.299-300).

### D.  This Court should dismiss any Title VII continuing-violation claim.

Wells does not have a continuing-violation claim for hostile work environment under Title VII. *See* App. Br. at 13 n.13. While Wells does not allege a continuing-violation claim, she attempts to bring a claim on appeal. *See* App. Br. at 13 n 13.

Wells argues that "an alarming set of employment practices perpetrated and condoned by TTU over the course of her tenure, and ending with not only the publication of harmful emails in June 2022 [and] continuing with harmful and retaliatory actions continuing through February 2023" were "well within the limitations period" making a hostile work environment claim under Title VII timely. *Id.* (emphasis omitted). She basically argues that that any potential discrete acts in 2022 or 2023 are timely, thereby making any discrete acts that occurred when she was last an employee in 2017, timely. Her logic is flawed.

First, Wells was not an employee in 2022 or 2023, as set forth above, so she cannot bring a hostile work environment claim based on purported conduct during that time. Her purported claims cannot be saved by the continuing violations doctrine based on alleged conduct in 2022 or 2023 when she was not an employee, either.

"Under the continuing violations doctrine, a plaintiff may complain of otherwise time-barred discriminatory acts if it can be shown that the discrimination manifested itself over time, rather than in a series of discrete acts." *Frank v. Xerox Corp.,* 347 F.3d 130, 136 (5th Cir. 2003). "Claims alleging discrete acts are not subject to the continuing violation doctrine; hostile workplace claims are." *Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.,* 850 F.3d 731, 737 (5th Cir. 2017), *as revised* (Mar. 13, 2017). "Hostile environment claims are 'continuing' because they involve

repeated conduct, so the 'unlawful employment practice' cannot be said to occur on any particular day." *Id.* "As long as 'an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.'" *Id.* (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)).

There are three main limits of the continuing-violation doctrine: "(1) the plaintiff must demonstrate that the separate acts are related; (2) the violation must be continuing; intervening action by the employer, among other things, will sever the acts that preceded it from those subsequent to it; and (3) the doctrine may be tempered by the court's equitable powers, which must be exercised to 'honor Title VII's remedial purpose without negating the particular purpose of the filing requirement.'" *Heath*, 850 F.3d at 738 (quoting *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 328 (5th Cir. 2009)). Even where courts have considered applying the continuing violations doctrine to permit an otherwise time-barred claim to proceed, courts consider the permanence of the alleged discriminatory conduct—being "at what point should the violation have triggered an employee's awareness and duty to assert his or her rights." *Gallentine v. Hous. Auth. of City of Port Arthur*, 919 F. Supp. 2d 787, 801-02 (E.D. Tex. 2013) (quoting *Berry v. Bd.*

*of Supervisors of L.S.U.*, 715 F.2d 971, 981 (5th Cir. 1983)) (cleaned up); *see also Lopez v. Kempthorne*, 684 F. Supp. 2d 827, 861 (S.D. Tex. 2010) (outlining these three factors).

Respecting permanence, "the focus is on what incidents or events, in fairness and logic, should have placed the average lay person on notice that her rights have been violated." *Lopez*, 684 F. Supp. 2d at 861 (quoting *Glass v. Petro-Tex Chem. Corp.*, 757 F.2d 1554, 1560-61 (5th Cir. 1985)). "Basically, permanence is an inquiry into what the plaintiff knew or should have known at the time of the discriminatory act . . .. If a plaintiff knows or with the exercise of reasonable diligence would have known that she suffered from discrimination, she may not sit back and accumulate all the discriminatory acts and sue on all within the statutory period applicable to the last one." *Gallentine*, 919 F. Supp. 2d at 802 (internal quotations omitted). This factor and others aim "to 'honor [the statute's] remedial purpose without negating the particular purpose of the [timely] filing requirement.'" *Lopez,* 684 F. Supp. 2d at 861 (quoting *Stewart*, 586 F.3d at 328 (citations and internal quotations omitted)).

Here, Wells attempts to revive a 2017 hostile work environment claim based on conduct occurring while a mentor in 2022. But had Wells believed that certain acts created a hostile work environment prior to 2017, Wells

should have brought those claims within the appropriate time period. Wells was required to exercise reasonable diligence in 2017 and before, and she is prohibited from sitting back and accumulating alleged discriminatory acts and suing on all of those alleged acts over five years after her employment relationship with TTU ended. *Gallentine*, 919 F. Supp. 2d at 802 (internal quotations omitted). She cannot now argue that her 2022 and 2023 allegations related to her mentor role somehow make her hostile work environment allegations prior to 2017 timely by pointing to the continuing-violation doctrine. She makes no attempt to allege or show how any separate acts dating back to 2012 are related to any acts in 2023. (*See generally* ROA.128-166). Wells' argument undermines the remedial purpose of Title VII because it completely negates the purpose of having a timely filing requirement. Additionally, ending the mentor relationship was a discrete act that cannot be relied upon under the continuing-violation doctrine to make an otherwise untimely claim timely.

Moreover, allegations of a hostile work environment under Title VII must be "severe" and "pervasive." *Morgan*, 536 U.S. at 116. "[W]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII

is violated." *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). *See Collier v. Dallas Cnty. Hosp. Dist.*, 827 F. App'x 373, 378 (5th Cir. 2020) (holding that racial graffiti with the "N-word," being called "boy," two swastikas drawn on the walls of a room that he worked in and remaining for eighteen months before being painted over despite the plaintiff's complaints was insufficient to create a hostile work environment); *Barnett v. Boeing Co.,* No. 08-20232, 306 F. App'x 875, 876, 880 (5th Cir. 2009) (holding that the employee failed to establish that the sexual harassment was sufficiently severe or pervasive, despite evidence that a male co-worker leered at her, touched her in sexually inappropriate and unwelcome ways, and actively intimidated her after she complained of his actions); *Russell v. Univ. of Tex. of the Permian Basin*, No. 06–50102, 234 F. App'x 195, 198, 204 (5th Cir. 2007) (per curiam) (holding that rubbing plaintiff's hand and thigh, twice intimating that she wanted to move to New York City with plaintiff, stating that she would not mind watching a movie in bed with plaintiff, calling plaintiff "honey" or "babe" on numerous occasions were neither severe nor pervasive).

Wells has not sufficiently pleaded or supported the elements of a continuing-violation claim. (*See generally* ROA.128-166). Wells makes the conclusory allegations that she was subject to "a pervasive pattern of abuse,

hostility, neglect, disregard, intentional sabotage, penalization, and adverse employment actions" "at all material times." (ROA.157 ¶¶ 129, 131). In her brief, she refers to general allegations about her time as a mentor in the Hub Program in June 2022, and TTU's decision to end her involvement with the mentorship program as a showing of a "continuing violation" of a hostile work environment. App. Br. at 13, n13. (citing ROA.154-56 ¶¶ 110-115, 117). Nowhere in her allegations or within the filing period does Wells allege "severe" or "pervasive" harassment by Defendants. (*See generally* ROA.128-166). This claim fails as a matter of law for numerous reasons, and the district court properly dismissed all of Wells' Title VII claims. (ROA.300). This Court should affirm.

## II. This Court should affirm the dismissal of Wells' Title IX claims against TTU, Prien, and Penrose.

### A. Wells' Title IX claims fail as a matter of law.

The district court properly held that Wells cannot bring a Title IX claim against individual defendants and dismissed the claims against Prien and Penrose. (ROA.300); *see Fitzgerald*, 555 U.S. at 257. This Court should affirm.

As for her Title IX claim against TTU, this Court should affirm its dismissal because as the district court found, Wells has not been a TTU student since 2017. (ROA.301). Her Title IX claim against TTU is therefore untimely. (ROA.301). The statute of limitations for a Title IX claim is two years. *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 758 (5th Cir.

2015) (applying the two-year statute of limitations for personal injury claims to Title IX claims in Texas). Wells graduated with her PhD in 2017. (ROA.143 ¶ 64). Therefore, the latest Wells could have filed a Title IX claim against TTU was December 31, 2019. Therefore, her Title IX claims filed on March 22, 2023, were 4 years too late. (ROA.8-42). This alone is sufficient reason to uphold the dismissal of Wells' Title IX claim against TTU.

Wells attempts to assert that her Title IX claim did not accrue until 2022 because she was not aware of any alleged injury until then. App. Br. at 15-16. This Court, however, has held that "[u]nder federal law, a claim accrues and 'the limitations period begins to run the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured.'" *King-White*, 803 F.3d at 762. *See also Larkins v. S.D.P. Mfg. Inc.*, No. 4:23-CV-01687, 2024 WL 3744396, at *3 (S.D. Tex. Aug. 8, 2024) (finding that even though it was "beyond dispute" . . . "that Plaintiffs' claims accrued on the date of the accident . . .").

The same is true here. Had Wells believed that any particular act by TTU was a Title IX violation, her claim began to accrue when she was a student at TTU, by 2017, at the latest. She cannot simply claim that she became aware of actions in the fall of 2020 that took place in 2017 or before.

In the alternative, the fact that Wells alleges that she reported inappropriate actions to Dr. Sheridan in the fall of 2020 demonstrates that Wells was aware that she believed she had suffered an injury at the end of 2020, thus starting the two-year clock. (ROA.153-54 ¶ 106). To also assert that she was *not* aware of an alleged injury until June 2022 is contradictory. *See* App. Br. at 15-16. Her only non-conclusory allegation of any reporting was in the fall of 2020, and she filed a Title IX claim in March 2023. (ROA.153-54 ¶ 106). Wells' Title IX claim against TTU is therefore untimely.

Her Title IX claims fail as a matter of law against TTU, Prien, and Penrose. This court should affirm dismissal of Wells' Title IX claims for these reasons alone.

## B. The district court properly found that, even if timely, Wells fails to state viable Title IX claims.

Wells also does not allege sufficient facts to support a Title IX claim. To plausibly state a Title IX claim, Wells is required to plead sufficient facts to support: 1) a report of intentional sexual discrimination; 2) reported to an official authorized to address the discrimination and "institute corrective actions"; and 3) that TTU was "deliberately indifferent" to the report. *Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 358-59 (5th Cir. 2020). A plaintiff must allege that the school had "actual knowledge" of sexual harassment and that the school failed to adequately respond. *Id.* For a school to "have

knowledge, it is not enough that *any* employee knew of the harassment; it must be someone authorized to rectify it." *Id.* at 359 (emphasis in original). "[S]chools are liable only for *intentional* sex discrimination." *Id.* (emphasis in original).

However, Wells does not allege any facts to establish a Title IX claim. (*See generally* ROA.128-166). She simply makes conclusory allegations that she was "subject to harassment and unequal treatment by Defendants Dr. Prien and Dr. Penrose"; it was "based on sex and not another motivation"; the "harassment had the effect of denying Plaintiff the benefits of an education program"; it continued from the fall of 2012 through the summer of 2022; and the "evidence of the misconduct" included being removed from academic articles and dissemination of false and harmful information that was not realized by Wells until July 2022. (ROA.158 ¶¶ 141-49). These are conclusory and fail to allege any facts to support a Title IX claim.

The only other non-conclusory allegations that Wells makes is that she informed Dr. Mark Sheridan in the fall of 2020 that "the University needed to prevent students from sharing hotel rooms with professors" and that "students often are faced with unnecessary additional expenses." (ROA.153-54 ¶ 106). Wells' allegations fail to show that she reported any acts related to sex discrimination. (*See generally* ROA.128-166). Nor does Wells state that

Dr. Sheridan was an official with authority to institute corrective actions. *See Doe*, 964 F.3d at 359. As Wells alleges, Dr. Sheridan, was the "Vice Provost for Graduate and Postdoctoral Affairs and Dean of the Graduate School," not an employee at TTU who is charged with investigating Title IX claims. (ROA.153-54 ¶ 106).

The district court also correctly found that while Wells argues that Prien and Penrose are "high-ranking officials," the actual notice requirement applies unless the plaintiff alleges an official policy of sex-based discrimination, which Wells does not allege. (ROA.303).[3] Finally, there are simply no allegations to substantiate deliberate indifference by any TTU official.

Regarding Wells' participation in the Hub Program in 2022, the district court found that Wells was a non-student at that time. (ROA.301). It also found that "[t]o the extent that the Accelerator program could fall within the scope of Title IX, Wells's own allegations are that she was removed from her

---

[3] Wells also claims that adequate notice and deliberate indifference are fact questions and cannot be determined at the motion to dismiss stage. App. Br. at 18. However, Wells only alleges to have made a complaint in the fall of 2020, 3 years after her employment and student relationship ended with TTU; she alleges to have graduated in 2017 and does not allege to have engaged in a student or employee role at TTU after 2017. (ROA.153-54 ¶ 106, *see generally* 128-166). Therefore, by Wells' own admission in her live complaint, there is no factual issue. Wells fails to state a Title IX claim.

role as a mentor, not a participant or beneficiary of the program."
(ROA.302). This Court should affirm these findings.

For these reasons, this Court should also affirm the district court's
finding that Wells does not plausibly allege any element of a Title IX claim
and dismiss all Title IX claims. (ROA.300-303).

### C. Wells cannot bring a Title IX retaliation claim for the first time on appeal.

Wells' brief regarding an alleged Title IX retaliation claim is a maze.
For the first time on appeal Wells argues that she alleges a Title IX retaliation
claim; however, nowhere in her live complaint does she allege a Title IX
retaliation claim. App. Br. at 15-17; (ROA.128-166). The district court
properly found that a Title IX retaliation claim was not at issue in this case.
(ROA.301) ("Employees do not have a private right of action under Title IX
for discrimination unless they are asserting a retaliation claim for reporting
a Title IX violation, which is not at issue here.") (internal citations omitted);
*see Lowrey v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 247-48 (5th Cir. 1997);
*Lakoski v. James*, 66 F.3d 751, 754 (5th Cir. 1995). She is thus prohibited
from bringing such claims for the first time on appeal. *See Perry v. Tex.
Dep't. of Criminal Justice*, 275 F. App'x 277, 277 (5th Cir. 2008) (citing
*Stewart Glass & Mirror, Inc. v. U.S. Auto Glass Disc. Ctrs., Inc.*, 200 F.3d
307, 316-17 (5th Cir. 2000)) ("It is a bedrock principle of appellate review

that claims raised for the first time on appeal will not be considered."). Because Wells cannot allege new causes of action on appeal, any appeal on the basis of a Title IX retaliation claim would be frivolous and should not be considered.

Should the Court find that Wells had given sufficient notice to TTU that she was bringing a Title IX retaliation claim in her live complaint (which she did not), Wells has not pleaded sufficient facts to support such a claim. Courts apply the Title VII standard for retaliation to Title IX claims. *Normore v. Dallas Indep. Sch. Dist.*, 677 F. Supp. 3d 494, 535 (N.D. Tex. 2023). "To establish a prima facie case of retaliation, the plaintiff must show that: (1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) a causal connection exists between the protected activity and the adverse employment action." *Id.* (citations omitted).

As Appellees have repeatedly argued, Wells' live complaint does not support her being an employee or student at TTU since 2017. Wells is asking this Court to find that Wells was an "employee" within the statute of limitations who made a report under Title IX for which TTU retaliated. App. Br. at 15-18. This is absurd. It is unclear what Wells is even arguing. She merely concludes, "Wells alleges facts to support this claim, including a failure to investigate after hearing input from Wells, Prien, and Penrose,

Wells' (sic) complaints of having to share hotel rooms with her professors, and subsequent adverse actions without justification or explanation." App. Br. at 17 (citing ROA.131 ¶¶ 13, 14, 153-54 ¶¶ 105-06, 155-56 ¶¶ 112, 117).

This conclusory and confusing statement conflates allegations without establishing that Wells has pleaded a viable Title IX retaliation claim. If Appellees are required to speculate (they are not), it seems like Wells is claiming that her report to Sheridan in fall of 2020 was a protected activity for which being removed as a mentor in June 2022 was an adverse employment action. If that is her argument, it fails because Wells has not been an employee since 2017, foreclosing the argument that being removed from the mentorship program was an "employment action." Nor was Wells an employee in 2020 when she allegedly made general complaints to Sheridan. Wells therefore fails to establish a Title IX retaliation claim as a matter of law. This Court should find that Wells did not bring a Title IX retaliation claim in her live complaint and affirm the district court's dismissal of all asserted Title IX complaints.

## III. This Court should affirm the dismissal of Wells' state tort claims against Prien and Penrose pursuant to Sections 101.106(e) and 101.106(f) of the TTCA.

The district court properly dismissed Wells' tort claims under Sections 101.106(e) and 101.106(f) of the TTCA. (ROA.307-314). Wells only appeals the dismissal of the tortious interference with contract and trade secret misappropriation claims against Prien and the unjust enrichment and breach of fiduciary duty claims against both Prien and Penrose. App. Br. at 18-21. The district court properly dismissed these claims. This Court should affirm.

### A. This Court should affirm the dismissal of all of Wells' tort claims pursuant to Section 101.106(e) of the TTCA.

The district court properly applied Section 101.106(e) in holding that Wells' election to bring IIED, fraudulent concealment, and defamation per se claims against TTU required mandatory dismissal of the claims against Penrose and Prien individually under the irrevocable election of remedies. (ROA.8-42, ¶¶ 180-86, 200-08, 213-24). *See Univ. of Tex. Health Sci. Ctr. at Hous. v. Rios*, 542 S.W.3d 530, 536-37 (Tex. 2017). Section 101.106(e) provides: "[i]f a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit."

The district court found that "[b]ringing the same claim against both parties acts as 'an election to sue only the government.'" (ROA.309 citing *Rios*, 542 S.W.3d at 537. It also found that once the government entity files a motion to dismiss under Section 101.106(e), "the individual defendants' statutory right to dismissal of those tort claims is perfected and cannot be undone by a subsequent amended pleading." (ROA.309). It also found that once the government entity files the motion to dismiss, the individual defendants "become immune from suit as to the relevant claims, and no subsequent pleading can remove that protection." (ROA.309-10).

Accordingly, the district court properly found that because Wells asserted the IIED, fraudulent concealment, and defamation per se claims against Prien, Penrose, and TTU in its original complaint, this resulted in an irrevocable election to proceed against Prien and Penrose in their official capacities. (ROA.310). The district court found that once TTU requested that the district court dismiss Wells' tort claims against Prien and Penrose in its original motion to dismiss while confirming that they were employees of TTU, Prien and Penrose "accrued their right to dismissal" and "Wells cannot avoid this result by amending her petition to drop the tort claims against Texas Tech." (ROA.310 citing *Rios*, 542 S.W. 3d at 538) (cleaned up).

The district court also properly found that the irrevocable-election principle is a substantive rule and not procedural. (ROA.310-14). *See Hanna*, 380 U.S. at 465. The district court was correct that the irrevocable-election principle is a substantive rule because the rule is outcome determinative and it implicates the twin aims of the *Erie* doctrine, "discouragement of forum shopping and avoidance of inequitable administration of the laws." (ROA.312); *Hanna*, 380 U.S. at 468.

The district court additionally found that while Wells' claims for unjust enrichment, breach of fiduciary duty, trade secret misappropriation, and tortious interference with contractual relations were not clearly alleged against TTU, "they are still barred under the irrevocable election to the extent they arise from 'the same subject matter as the action brought against the governmental entity.'" (ROA.315 citing *Williams*, 694 F. Supp. 3d at 919 (*quoting Holland v. City of Houston*, 41 F. Supp. 2d 678, 717 (S.D. Tex. 1999)). *See Goodman v. Harris Cnty.*, 571 F.3d 388, 394 (5th Cir. 2009). Because these claims arise from the same subject matter as the actions brought against TTU—Wells' involvement with Prien and Penrose as professors at TTU—this Court should affirm the dismissal of Wells' claims for unjust enrichment, breach of fiduciary duty, trade secret

misappropriation, and tortious interference with contractual relations pursuant to Section 101.106(e). (ROA.315, 315 n7).

This ruling should remain undisturbed; this Court should affirm the dismissal of all of Wells' tort claims as subject to dismissal under Section 101.106(e) of the TTCA. Further, Wells has waived any argument as to the dismissal of IIED, fraudulent concealment, and defamation per se claims because she did not incorporate these arguments in her opening brief.

**B. This Court should also affirm the dismissal of Wells' unjust enrichment, breach of fiduciary duty, trade secret misappropriation, and tortious interference with contractual relations under Section 101.106(f) of the TTCA.**

As the district court emphasized, "[t]o the extent these claims (unjust enrichment, breach of fiduciary duty, trade secret misappropriation, and tortious interference with contractual relations) are not subject to dismissal under Section 101.106(e), they are dismissed under Section 101.106(f)." ROA.315. Under Section 101.106(f) of the TTCA:

> [i]f a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under [the TTCA] against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

Tex. Civ. Prac & Rem. Code. *See also Franka v. Velasquez*, 332 S.W.3d 367, 381 (Tex. 2011).

The district court correctly found that Section 101.106(f) "favors 'quickly dismissing government employees when the suit should be brought against their employer,' and the Section 101.106 inquiry must avoid 'partial litigation of the underlying [tort] claim itself.'" (ROA.316) (quoting *Laverie v. Wetherbe*, 517 S.W.3d 748, 755 (Tex. 2017)).

The district court properly found that Prien and Penrose were acting within the scope of their employment when the allegedly tortious conduct occurred, requiring dismissal of the unjust enrichment, breach of fiduciary duty, trade secret misappropriation, and tortious interference with contractual relations claims against them. (ROA.317-18). "[T]he scope-of-employment inquiry under Section 101.106(f) focuses on whether the employee was doing his job," asking only whether "a connection exists between the employee's job duties and the alleged tortious conduct." (ROA.317-18 quoting *Garza v. Harrison*, 574 S.W.3d 389, 394 (Tex. 2019) (cleaned up) (quoting *Laverie*, 517 S.W.3d at 753)). *See Garza*, 574 S.W.3d at 401 (finding that the "employee's state of mind, motives, and competency are irrelevant so long as the conduct itself was pursuant to the employee's job responsibilities."). The district court also correctly found that

"[u]ltimately, so long as the acts are 'of the same *general nature* as the conduct authorized or incidental to the conduct authorized,' they are within the scope of employment." (ROA.317) (quoting *Wilkerson v. Univ. of N. Tex. By & Through Bd. of Regents*, 878 F.3d 147, 159 (5th Cir. 2017) (emphasis in original) (quoting *Laverie*, 517 S.W.3d at 753)).  The district court then found that Prien and Penrose were acting within the scope of employment as professors for all of Wells' allegations related to the unjust enrichment, breach of fiduciary duty, trade secret misappropriation, and tortious interference with contractual relations, requiring dismissal under Section 101.106(f).  (ROA.318-20, *see generally* 128-166).

Wells does not address the caselaw that the district court properly applied. Instead, she claims that this Court should apply Section 7.07(2) of the Restatement Third of Agency to find that Prien and Penrose were not acting within the scope of their employment as it pertains to these additional tort claims. App. Br. at 20. She also argues that Prien and Penrose were required to meet a burden of proof showing that their conduct was not within the scope of their employment. App. Br at 20. Wells is wrong. At the pleadings stage, the plaintiff must allege sufficient facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Wells' allegations against Prien and Penrose for their conduct as professors at TTU

demonstrate that Prien and Penrose were acting within the scope of their employment, requiring dismissal of these claims under Section 101.106(f). (*See generally* ROA.128-166).

## IV. This Court should affirm the dismissal of Wells' TUTSA trade secret misappropriation claim for failure to state a claim.

The district court properly dismissed Wells' trade secret misappropriation claim against Prien under TUTSA for failure to state a claim. (ROA.321). As the district court pointed out, Wells does not indicate that she is bringing a TUTSA claim. (ROA.321 n8). Nor did Wells state that she was bringing a DTSA claim. Because Wells did not specifically allege a DTSA claim or make any mention of DTSA in her brief, she has waived this claim. *See* App. Brief at 21-22. For Wells' failure to properly allege a TUTSA claim, the district court's dismissal for failure to state a claim should be affirmed.

To state a TUTSA claim, a plaintiff must allege that "(1) a trade secret existed, (2) the trade secret was acquired through a breach of a confidential relationship or discovered by improper means, and (3) the defendant [disclosed or] used the trade secret without authorization from the plaintiff." (ROA.321 quoting *CAE Integrated, LLC v. Moov Techs., Inc.*, 44 F.4th 257, 262 (5th Cir. 2022) (emphasis omitted) (quoting *GE Betz, Inc. v. Moffitt-Johnston*, 885 F.3d 318, 325 (5th Cir. 2018)); *Well Cell Glob. LLC v. Calvit*,

No. H-22-3062, 2024 WL709657, at *5 (S.D. Tex. Feb. 21, 2024); Tex. Civ.

Prac. & Rem. Code § 134.002(3). A "trade secret" is specifically defined under

Section 134.002(3) of the Texas Civil Practice and Remedies Code as:

> all forms and types of information, including business, scientific, technical, economic, or engineering information, and any formula, design, prototype, pattern, plan, compilation, program device, program, code, device, method, technique, process, procedure, financial data, or list of actual or potential customers or suppliers, whether tangible or intangible and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if:
>
> (A)   the owner of the trade secret has taken reasonable measures under the circumstances to keep the information secret; and
> (B)   the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

The district court correctly found that Wells failed to plausibly allege

that Wells individually owned any trade secret that was misappropriated.

(ROA.321). She also fails to allege that the "data from research as part of

Embryotics and EMGenisys" met the definition of trade secret under TUTSA,

how the alleged trade secret derived economic value from not being generally

known, and the specific steps that Wells took to maintain the secrecy of the

information.  (ROA.321-24,154 ¶¶ 174-79).

In her brief, Wells merely makes conclusory statements that she "clearly

and adequately alleges that the information subject to her agreement with

42

Simplot [] regarding 'a sex selection study' she performed in connection with Simplot's agribusiness" was a trade secret because she says it was. App. Br. at 22. Wells also claims that a non-disclosure agreement between her and Prien was sufficient to maintain the secrecy of the alleged trade secret and that Prien "improperly acquired" the data. *Id.*

However, as the district court correctly found, Wells' past company, Embryotics had a non-disclosure agreement with Simplot, not Wells. (ROA.322). The district court also properly found that Wells "provided the information to Prien without any agreement between him and her or her companies to maintain the secrecy of the information." (ROA.322). The district court also found that Wells' definition of a trade secret was "incredibly vague and overinclusive." (ROA.323). Appellees agree. This Court should therefore affirm the findings of the district court and dismiss Wells' TUTSA  trade secret misappropriation claim against Prien for Wells' failure to plausibly allege that she owned a trade secret that was misappropriated. (ROA.324).

## V.   This Court should also affirm the denial of Wells' request for leave to amend when all of the jurisdictional, statutory, and limitations issues would make an amendment futile.

Wells' original complaint had many pleading deficiencies which she did not rectify in her amended complaint. The district court correctly denied

Wells' request for leave to amend again given that that many of her claims either had statutes of limitations that had long lapsed, that she was suing a state entity and its officials for which immunities apply, that statutes require a party to decide who they are suing prior to filing a complaint, and that certain claims just fail as a matter of law. (*See generally* ROA.289-327).

This Court examines five factors in determining "whether to grant a party leave to amend a complaint: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by previous amendments, (4) undue prejudice to the opposing party, and (5) futility of the amendment." *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (citations omitted) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "[D]ecisions concerning motions to amend are 'entrusted to the sound discretion of the district court . . ..'" *Smith*, 393 F.3d at 595 (citing *Quintanilla v. Tex. Television, Inc.*, 139 F.3d 494, 499 (5th Cir. 1998)) (quoting *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993)).

This Court should affirm the denial of Wells' request because Wells cannot cure her pleading defects given the glaring and irredeemable limitations, jurisdictional, and statutory issues with her claims. (*See generally* ROA.128-166). As the district court found, it would be futile to allow Wells to amend the claims she originally brought *again* because there

is no cure. (ROA.327). Because Wells cannot state a claim upon which relief can be granted, an amendment would be futile. *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (quoting *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000)) (internal citations and quotations omitted) ("An amendment is futile if it would fail to survive a Rule 12(b)(6) motion. Therefore, we review the proposed amended complaint under 'the same standard of legal sufficiency as applies under Rule 12(b)(6).'").

Nor did Wells provide any indication as to how an amendment would or could cure her pleading deficiencies. *See Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021) (citations omitted) ("A court should freely give leave to amend when justice so requires, FED. R. CIV. P. 15(a)(2), but a movant must give the court at least some notice of what his or her amendments would be and how those amendments would cure the initial complaint's defects."). In *Scott*, this Court held that the district court did not err when it denied leave to amend when "[plaintiff] failed to offer any grounds as to why his leave should be granted or how deficiencies in his complaint could be corrected." *Id.*

The same is true here. The district court did not err and did not abuse its discretion in denying Wells' request given that she did not explain how

her deficiencies could be corrected. (ROA.252-53, 263). This Court should affirm.

## VI. Wells has waived any arguments she did not bring in her opening brief.

In the event that Wells attempts to appeal claims that she has not raised in her opening brief, those arguments have been waived. *See United States v. Fernandez*, 48 F.4th 405, 412 (5th Cir. 2022) (quoting *Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 n.1 (5th Cir. 2004) (holding that "[f]ailure adequately to brief an issue on appeal constitutes waiver of that argument," including when a party fails to raise an argument in its opening brief). These claims include: trade secret misappropriation under DTSA, 42 U.S.C . § 1983 equal protection, correction of inventorship pursuant to 35 U.S.C. § 256, patent invalidity pursuant to 28 U.S.C. § 2201, IIED, fraudulent concealment, and defamation per se.

## CONCLUSION

This Court should affirm the district court's final judgment dismissing all of Wells' claims with prejudice and denying her leave to amend.

Respectfully submitted.

**KEN PAXTON**
Attorney General

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**JAMES LLOYD**
Deputy Attorney General for Civil
Litigation

**KIMBERLY GDULA**
Chief, General Litigation Division

*/s/ Kirstin M. Erickson*
**KIRSTIN M. ERICKSON**
Assistant Attorney General
Texas State Bar No. 24134194
Kirstin.Erickson@oag.texas.gov
Tel.: (512) 475-4031
Fax: (512) 320-0667

*/s/ Alyssa Bixby-Lawson*
**ALYSSA BIXBY-LAWSON**
Assistant Attorney General
Texas State Bar No. 24122680
alyssa.bixby-lawson@oag.texas.gov
Tel.: (210) 270-1118
Fax: (512) 477-2348

General Litigation Division
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548

***Counsel for Appellees***

## CERTIFICATE OF SERVICE

On October 11, 2024, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

*/s/Kirstin M. Erickson*
Counsel for Defendants-Appellees

## CERTIFICATE OF COMPLIANCE

This motion complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 10,636 words, excluding the parts exempted by Rule 32(f); and (2) the typeface and type style requirements of Rule 32(a)(5) and Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the program used for the word count).

*/s/Kirstin M. Erickson*
Counsel for Defendants-Appellees